WOODLAWN CEMETERY *vs.* INHABITANTS OF EVERETT.

Middlesex. Jan. 14. — Sept. 10, 1875. AMES & ENDICOTT, JJ., absent.

Under the statutes of the Commonwealth land is not " dedicated for " a cemetery or for the burial of the dead, so as to be exempt from taxation, or " used or appropriated " to the purpose of a burial ground so as to entitle the owner to use it for that purpose for the future without municipal permission, until it has been devoted or set apart, and some active measures taken toward preparing the ground for that purpose.

In 1850, a parcel of land was conveyed to a cemetery corporation organized under the St. of 1841, c. 114, and the corporation voted to appropriate it to the purposes of a cemetery or burial place of the dead. In 1858, the vendor foreclosed a mortgage given by the corporation and took possession of the land. In 1868, another cemetery corporation voted to purchase the land for the purposes of its cemetery, and applied to the town, in which the land lay, for permission to use the land for burial purposes ; the town refused to grant permission. The corporation then bought the land, and gave notice to the town that it was dedicated to the uses and purposes of a cemetery, and passed a vote that it was so dedicated. A house on the land was used by the gardener of the corporation, a hot-house for propagating plants for the cemetery was built thereon, and the land was used to pile manure, grave-markers, stone posts, wood and lumber for the cemetery, and for cutting sods for lots therein ; but no part of the land was ever used for burials, or laid out into lots or permanent avenues, and no attempt was made to sell any part of it for burial pur

poses. *Held*, in an action to recover back a public tax levied on the land in 1870, that the land had not been so "dedicated for the burial of the dead," within the Gen. Sts. *c.* 11, § 5, *cl.* 8, as to be exempt from taxation.

The provisions of the St. of 1855, *c.* 257, §§ 2, 3, and of the Gen. Sts. *c.* 28, § 5, that no land, except that already so used and appropriated, shall be used for burial purposes other than private tombs, unless by permission of the town, or of the mayor and aldermen of the city in which the same is situated, are constitutional, and, under the Rev. Sts. *c.* 2, § 6, *cl.* 13, and the Gen. Sts. *c.* 3, § 7, *cl.* 13, extend to corporations for burial purposes, whose charters do not exempt them from the control of the Legislature in the exercise of its police power for the security of the public health and comfort.

Under an article in a warrant for a town meeting "to see what action the town will take relative to collecting the tax on" certain land, "and pass any votes on the subject that may be deemed proper," the town voted to refer the subject matter of the article to the selectmen with full powers. *Held*, that the selectmen had no authority, in consideration of the tax being paid, to grant the owner of the land permission to use the land for burial purposes.

CONTRACT to recover the amount of taxes paid under protest. The case was submitted to the Superior Court, and after judgment for the defendant, to this court, on appeal, upon an agreed statement of facts, in substance as follows :

On August 31, 1850, in pursuance of the St. of 1841, *c.* 114, the Woodlawn Cemetery was organized as a corporation, "for the purpose of procuring, establishing, and preparing a cemetery or burial place for the dead." In 1851, the corporation purchased a parcel of land, then in the town of Malden, for the objects of its organization ; which land was then and has been ever since dedicated and used for the purpose of a cemetery, and more than eight thousand persons have been buried therein.

A portion of the Woodlawn Cemetery was then bounded in part by land known as the Corbett farm, which extended into it, touching it on three sides and almost reaching to one of the main avenues. As soon as the Woodlawn Cemetery was organized, an effort was made by it to procure this land ; but it was conveyed on October 1, 1850, by Corbett to Samuel G. Wheeler, who on the same day conveyed it to the Mt. Lebanon Cemetery, a corporation organized under the same statute, in the same manner and for the same purpose as the Woodlawn Cemetery. The Mt. Lebanon Cemetery Corporation voted to appropriate the same to the purposes of a cemetery or burial place for the dead ; but, after the payment of $8,000 of the purchase money, the purchaser failed to pay the residue, and Corbett took possession for

condition broken, under a mortgage made to him by Wheeler, and foreclosed the same about 1858. No burials were made therein, but the lands have since remained, divided by stone walls into five or six wood, pasture, or grass lots, high and low, generally rough, and which would require much time and expense to prepare them for burial purposes.

After the death of Corbett, the Woodlawn Cemetery, at a meeting held on March 11, 1868, unanimously voted to purchase and secure for the purposes of the cemetery, as, soon as possible, the said Corbett lot, containing about seventy-five acres, and that the president or treasurer petition the town of Malden in behalf of Woodlawn Cemetery for consent to annex said land to their cemetery and to devote the same immediately to the purposes of burial and to the uses and purposes of the cemetery. The trustees of the cemetery, on April 6, 1868, by vote, unanimously approved of such purchase and advised its completion for such purposes.

A meeting of the town of Malden was held on April 6, 1868, in pursuance of a warrant which contained the following article : " To see if the town will consent to the enlargement of Woodlawn Cemetery by adding thereto the Corbett farm, so called, adjoining the same, on petition of H. W. Fuller, treasurer ; " and at said meeting the town passed the following vote : " That we do not consent that the Corbett farm, so called, be sold to be used for a cemetery or for burial purposes."

The Woodlawn Cemetery, nevertheless, thereafter completed the purchase of said land, according to a previous agreement, and the said land was conveyed to it on April 30, 1868, by deed that day recorded, and notice thereof and also that it was dedicated to the uses and purposes of a cemetery was given the same day to the selectmen and assessors of Malden, and the fence which had separated it from the cemetery was then removed·; and at a meeting of the plaintiff corporation, held March 10, 1869, the following vote was passed : " That we approve the purchase of the Corbett lands, and dedicate them to the purposes of a cemetery or burial place for the dead." Notice thereof was given to the town of Malden.

In 1868 and 1869, taxes were assessed in the town of Malden upon the Corbett farm land, and upon the refusal of the plaintiff

to pay said taxes, a meeting of the town was held October 16, 1869, in pursuance of a warrant which contained the following article, entitled the sixth: "To see what action the town will take relative to collecting the tax on the Corbett farm, and pass any votes on the subject that may be deemed proper." At said meeting it was voted "that the subject matter of the sixth article be referred to the selectmen with full powers."

Upon conferences thereafter had between the selectmen and the plaintiff, the following written agreement was executed for the compromise and adjustment of the controversy: "The Woodlawn Cemetery consent and agree, for the sake of harmony, to pay the assessed taxes, amounting to $350; and the town, so far as this committee have power, grants them permission to use the said lands owned by them for the purposes of burial." In pursuance of this agreement, the taxes were paid before the passage of the St. of 1870, *c.* 66, and before the town of Everett was set off from Malden, and the town of Everett had its share of the benefit thereof as part of the town of Malden.

Soon afterwards, by the St. of 1870, *c.* 66, a part of the town of Malden, which included the cemetery and all other lands aforesaid belonging to the plaintiff, was incorporated on March 9, 1870, into the town of Everett; and public taxes were assessed by said town of Everett upon the Corbett farm land in 1870 and 1871, amounting in the whole to the sum of $400.57, which sum was paid to the defendant by the plaintiff, under protest, on January 22, 1873, after said land had been advertised for sale for nonpayment of such taxes.

Immediately after the purchase of the said land by the plaintiff, the house thereon was repaired, and has been ever since occupied by the gardener of the cemetery, without rent; and a hothouse for propagating plants for the cemetery was built thereon, in 1868, and has ever since been in use for that purpose, a young nursery of evergreens was also planted near the cemetery, and portions of the land used for piling places for manure, grave-markers, stone posts, wood, lumber, &c., for the cemetery, and for cutting sods for lots therein. But no part of this land has been used since the purchase for burials, or divided off or laid out into lots or permanent avenues, or any attempt been made to sell the same for purposes of burial.

From 1851 to 1868, the Woodlawn Cemetery contained about eighty acres fit for interments, and at the time of the purchase of the Corbett land, about one half of the burial lots in the cemetery had been sold, and the proprietors, trustees and officers unanimously resolved that the interests of the public as well as of the cemetery, on account of the increase of the population of the neighboring towns, the condition and position of the cemetery, its necessary operations and improvements, required the purchase to be made ; and that it was necessary for the good of all concerned and would be advantageous both to the cemetery and to the public, as the land would be soon used for burial purposes or for the cemetery and ought not to be diverted to other uses.

Upon the foregoing statement of facts, so far as material, if the Corbett land was exempt from public taxes, judgment was to be rendered for the plaintiff for such sum as it should appear to be entitled to ; otherwise for the defendant ; it being agreed that, as to any of said facts which would be immaterial or incompetent, if evidence thereof were offered at a trial, each party reserved the right to take the same objections as could be taken, at the trial, to such evidence.

*H. W. Paine & H. G. Pickering,* for the plaintiff. 1. The St. of 1841, *c.* 114, under which the plaintiff corporation was organized, by § 3, authorized all such corporations to " take and hold so much real and personal estate as may be necessary for the objects of their organization." This power was to be exercised in the future, and as might be necessary. It was not limited to specific lands or a fixed number of acres. All that should be necessary for the purpose could be held and might be purchased, when necessary, in one parcel or in several parcels. A liberal construction should be given to meet requirements. The court will not limit it to a case of immediate necessity, or for graves only. *Massachusetts General Hospital* v. *Somerville,* 101 Mass. 319. *Wesleyan Academy* v. *Wilbraham,* 99 Mass. 599.

2. The St. of 1855, *c.* 237, was not intended to lessen, but to enlarge the plaintiff's rights, and confirm all it had before. This statute expressly provides that the plaintiff corporation shall be entitled to all the rights, benefits and provisions of the St. of 1841, *c.* 114, and subject to the provisions of the by-laws of the corporation.

This land was exempt from public taxes by the St. of 1841, c. 114, § 7; but the Legislature further, by the St. of 1855, *c.* 237, expressly provided that the provisions of § 7 of the previous statute " shall apply to all the shares, property and effects of said corporation so long as its real estate shall remain dedicated to the uses and purposes of a cemetery or burial place for the dead." This exemption from public taxes is a vested right, to continue as long as the land continues appropriated to such use or purpose, and cannot be divested without a breach of the condition by the plaintiffs. *Hardy* v. *Waltham,* 7 Pick. 108.

3. The land in question does not come within the words or the spirit of the Gen. Sts. *c.* 28, § 5. That section applies only to private lands and to real persons, and does not necessarily restrain the rights of corporations then existing of enlarging their grounds, or protecting themselves, and providing for future needs.

This land, at the time of the passing of the General Statutes, and previously, was appropriated to the purposes of burial, by a corporation like the plaintiff's, organized under the same statute, at about the same time, and called the Mt. Lebanon Cemetery. It was not necessary to ask permission to bury of the town. If that corporation had redeemed the land, it could have been used for burials, and this right of redemption did not expire until three years after the St. of 1855.

The court will not presume that any delay was unnecessary, or that any corporate rights had been lost.

It was not only the right but the duty of the trustees and proprietors of a prominent and beautiful cemetery, like Woodlawn. to provide for the future; and considering how rapidly the population was increasing, and lands were cut up and their own land vanishing, they should seasonably secure all the land they deemed necessary for ornament or use, or to guard against dangers or nuisances, so as to execute in the best manner the purposes of their organization. The deliberate and unanimous votes of trustees and proprietors and lot owners cannot be disregarded, but are conclusive of the necessity for the purchase made. Their discretion cannot be impeached. *Balch* v. *County Commissioners,* 103 Mass. 106.

The case finds that this land was at the outset, in 1850, deemed necessary, and was sought, but could not be purchased; that it

went into the hands of a rival corporation ; and then to Corbett by a foreclosure of a mortgage made by Wheeler to him ; and the plaintiff purchased as soon as it could be had. The land lies in the arms of the plaintiff corporation, and much of it will require years to prepare it for burials; only the part adjoining can be so used for a long time to come.

4. It has been incorporated into the cemetery, is now a part thereof, and has been fully dedicated to the uses and purposes of a cemetery or burial place for the dead. No particular form of dedication is required.

The trustees and proprietors were not bound to lose their only chance of securing what was necessary, because the town, knowing little of that necessity, might be unwilling to give permission at once to bury there.

The refusal of the town is only postponing one particular and immediate use of the land, viz., that of burial, and does not prevent the cemetery from holding it as property and for all the other uses which come into the general scope of a rural cemetery. Such property is exempt from taxation. If it was necessary for any of the purposes connected with the cemetery, it was property exempt from public taxes.

5. This land was purchased two years before the town of Everett was set off from Malden. The town of Malden, by its selectmen, who were *ex officio* the board of health, and to whom full powers were given by vote of the town, had given permission to bury there. And the defendant received its share of the money paid for it. The notice in the warrant was sufficient. *Blackburn* v. *Walpole*, 9 Pick. 97. *Ford* v. *Clough*, 8 Greenl. 334, 344. *Wyley* v. *Wilson*, 44 Vt. 404. *Belfast & Moosehead Lake Railroad* v. *Brooks*, 60 Maine, 568.

*F. E. Parker*, for the defendant.

GRAY, C. J. By the Rev. Sts. *c.* 7, § 5, *cl.* 5, " all tombs and rights of burial " were exempted from taxation.

The St. of 1841, *c.* 114, authorizing ten or more persons to organize themselves as a corporation for the purpose of procuring, establishing and preparing a burial place for the dead, provided in § 7 that "the real estate of such cemeteries or burial places shall be exempt from public taxes, so long as the same shall remain dedicated for the purpose of a cemetery or burial place for the dead."

By § 1 of the St. of 1855, *c.* 237, (which was passed and took effect on April 27, 1855,) the Woodlawn Cemetery is declared to be such a corporation ; and by § 4, the provision of the St. of 1841, *c.* 114, § 7, above quoted, " shall apply to all the shares, property and effects of said corporation, so long as its real estate shall remain dedicated to the uses and purposes of a cemetery or burial place for the dead."

By the St. of 1855, *c.* 257, (passed three days later,) § 3, " no land other than that now used or appropriated in any town in this Commonwealth for the purpose of a burial ground shall be used by any person or persons for the burial of the dead, unless permission is granted by the town." Section 2 contains a similar provision as to cities. And by § 10 nothing in this act shall prevent inhabitants of any town from using or erecting a tomb on their own land for the exclusive use of their own family.

These provisions are substantially reënacted in the General Statutes. By *c.* 11, § 5, *cl.* 8, " cemeteries, tombs and rights of burial; so long as the same shall be dedicated for the burial of the dead," are exempted from taxation. And by *c.* 28, § 5, " except in the case of the erection or use of a tomb on private land for the exclusive use of the family of the owner, no land, other than that already so used or appropriated, shall be used for the purpose of burial, unless by permission of the town, or of the mayor and aldermen of the city, in which the same is situated."

No land can be deemed to be "dedicated " for the purposes of a cemetery or burial place for the dead, so as to be exempt from taxation, or " used or appropriated " for the purpose of a burial ground, so as to entitle the owner to use it for that purpose for the future without municipal permission, which has not been devoted or set apart, and some active measures taken towards preparing the ground, for a burial place. A mere dedication or appropriation on paper is not enough.

It appears by the facts agreed that at the time of the passage of the St. of 1855, *c.* 257, the Mount Lebanon Cemetery, which had purchased the Corbett farm, and given a mortgage back to the vendor to secure the payment of part of the purchase money, had merely voted to appropriate the same to the purposes of a emetery or burial place, and had not in fact so appropriated it, nor done any act upon the land towards such appropriation. At

the time of the passage of the General Statutes, the vendor held the land, under a foreclosure of his mortgage for a breach of condition, unaffected by any appropriation or intention to appropriate it to the purposes of a cemetery. The Woodlawn Cemetery, the present plaintiff, acquired its title to the farm eight years afterwards. But even if the plaintiff could avail itself of the previous holding of the farm by the Mount Lebanon Cemetery, the facts show that it has never been actually used or appropriated for a burial ground, within the meaning of the statutes.

It is expressly agreed in the case stated that no part of this land has been used for burials, or divided off or laid out into lots or permanent avenues, and that no attempt has been made to sell it for purposes of burial. The use of a parcel of land for growing trees or shrubs, cutting turf, and depositing stone, wood and other materials, to be ultimately used in preparing and ornamenting a cemetery, is no dedication of such land itself for the purposes of a cemetery or burial place for the dead.

The cases cited by the learned counsel for the plaintiff are quite distinguishable from this. Those of *Wesleyan Academy* v. *Wilbraham*, 99 Mass. 599, and *Massachusetts General Hospital* v. *Somerville*, 101 Mass. 319, arose under the broader clause of the tax act, Gen. Sts. *c.* 11, § 5, *cl.* 3, which exempts all real estate occupied by charitable institutions " for the purposes for which they were incorporated ; " and in each case the lands held to be exempted were occupied by such an institution for the purposes specified in its charter. The extent of the decision in *Balch* v. *County Commissioners*, 103 Mass. 106, was, that it was no objection to the validity of an order of the county commissioners, under the St. of 1866, *c.* 112, authorizing land to be taken for the enlargement of a burial ground, that part of the land taken was to be used for a passage way from the burial ground to a public street.

The charter of the plaintiff corporation did not exempt lands, held by it for burial purposes, from the control of the Legislature in the exercise of its police power for the security of the public health and comfort. *Brick Presbyterian Church* v. *New York*, 5 Cowen, 538. *Coates* v. *New York*, 7 Cowen, 585. *Sohier* v. *Trinity Church*, 109 Mass. 1, 21. *Commonwealth* v. *Intoxicating Liquors*, 115 Mass. 153. The provisions of the St. of 1855, *c.*

257, §§ 2, 3, and Gen. Sts. *c.* 28, § 5, are a reasonable and lawful exercise of the power of the Legislature. Although the former speaks only of lands "used by any person or persons," yet those words, by the Rev. Sts. *c.* 2, § 6, *cl.* 13, and the Gen. Sts. *c.* 3, § 7, *cl.* 13, may, and in this case must, extend to corporations, in order to give them reasonable effect; for at the time of their passage very few, if any, lands in this Commonwealth were held by individuals for burial purposes, other than private tombs, which are expressly excepted.

The article in the warrant under which the town meeting in 1869 was held was limited to the collection of the tax already assessed on the Corbett farm, and did not include any question of granting permission to use it for the purpose of burial. The permission, granted by the committee appointed at that meeting, to the plaintiff to use the land for that purpose, was therefore unauthorized and of no legal effect. Even a permission from the town so to use the land would not exempt it from future taxation until it had been actually dedicated to the purposes of a burial place.

The Corbett farm, not having been so dedicated, is not exempt from taxation under the statutes of the Commonwealth.

*Judgment for the defendant.*