[Civ. No. 5094.   First Appellate District, Division Two.—June 10, 1925.]

In the Matter of the Application of LAUREL HILL CEME-
TERY ASSOCIATION (a Corporation), for Leave to
Sell Real Property.   LAUREL HILL CEMETERY
ASSOCIATION ·(a Corporation),   Respondent,   v.
GEORGE CLARK SARGENT et al., Appellants.

[1] CEMETERIES — RIGHT TO SELL UNUSED LANDS — STATUTORY CON-
STRUCTION.—Under the act approved April 18, 1859 (Stats. 1859,
p. 267), a cemetery association had the right to sell a portion
of its holdings where such lands had not been mapped or platted
and, under a city ordinance, such lands could not thereafter be
used for the purpose of therein burying the body of any dead
person; and when the codes were enacted said statute was codi-
fied and such right was not diminished or curtailed as to cemetery
associations which had elected in the manner prescribed by law
to continue their existence under the codes.

[2] ID.—RIGHT OF CORPORATION TO SELL LAND.—When a corporation
has the power to purchase and own land, it has the same right
as a natural person to sell such land; and this is so because the
most important attributes of a natural person are his absolute
dominion over his property and his right of disposition thereof
and the same may be said of a corporation aggregate as to its
corporate property.

[3] ID.—BURIAL LOTS—MAPPING AND PLATTING OF LANDS—RESTRIC-
TION TO CEMETERY USES.—As to cemetery lots in which bodies have
been buried, and as to cemetery lands which have been mapped
and platted, the map recorded, and from which maps lots have
been sold, the statute never contemplated that such lands should
be sold except as provided expressly by the statute; on the other
hand, such property was "to be taken and occupied exclusively
for a cemetery for the burial of the dead."

[4] ID.—DEDICATION TO BURIAL PURPOSES—BURDEN OF PROOF.—He
who would assert that lands owned by a cemetery association have
been dedicated to burial purposes must show that all of the calls
of the statute have been followed because such provisions have
been held to be of the substance of the creation of the dedication.

1. See 4 Cal. Jur. 1004.

2. Power of corporation to sell property, notes, 99 Am. Dec.
333; 70 Am. St. Rep. 163. See, also, 7 Cal. Jur. 74; 7 R. C. L. 571.

73 Cal. App.—13

[5] ID.—SALE OF CEMETERY LANDS—USE FOR UNSIGHTLY PURPOSES.—
The fact that lands of a cemetery association, if so sold, may
be used for unsightly purposes is not sufficient ground for deny-
ing the association leave to sell said lands.

(1) 11 C. J., p. 58, n. 45.  (2) 14a C. J., p. 521, n. 62.  (3) 11
C. J., p. 58, n. 42.  (4) 18 C. J., p. 93, n. 68.  (5) 11 C. J., p. 58,
n. 45.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco. Warren V. Tryon,
Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

George Clark Sargent for Appellants.

Haven, Athearn, Chandler & Farmer for Respondent.

STURTEVANT, J.—This is an application for leave to
sell real property. The application was made by Laurel
Hill Cemetery Association. In the lower court George
Clark Sargent and others appeared as contestants. A hear-
ing of the application was had and thereafter the trial court
made an order granting the leave. From that order the con-
testants have appealed, and have brought up the judgment-
roll and a bill of exceptions.

[1] In this court the appellants contend that the peti-
tioner has not been given the power and, in view of the con-
tractual rights that have been established, the petitioner may
not legally be granted power to sell any of the lands of the
corporation. On the other hand, the respondent concedes
that lands which have been mapped and platted, or lands in
which interments have been made, may not legally be sold;
but, in this behalf, the respondent shows to the court that
the lands for which the respondent asks leave to sell are only
a portion of the holdings of the respondent and that such
lands are not and never have been mapped or platted and
that at the present time, by reason of certain ordinances
heretofore enacted by the board of supervisors, the lands in
question may not hereafter be used for the purpose of
therein burying the body of any dead person. As to such
lands the respondent contends that under the act approved

April 18, 1859, page 267 of the Statutes of 1859, the respondent had the right to sell such lands; that when the codes were enacted said statute was codified and the respondent elected in the manner prescribed by law to continue its existence under the codes, and that under the provisions of the codes the respondent's said right was not curtailed or diminished in any respect. In this contention we think the respondent is correct.

Looking at the statute as a whole, it is perfectly clear that when the respondent corporation organized and thereafter filed and caused to be recorded the certificate mentioned in section 2 and section 3 of the statute, it thereupon became vested with power "To purchase, hold, sell, and convey, such real and personal estate as the purposes of the incorporation shall require." (Sec. 3, subd. 3.) It also provided that "Any association incorporated under this Act, may take, by purchase or devise, and hold, . . . not exceeding 320 acres of land, to be held and occupied exclusively for a cemetery for the burial of the dead. Such land, or such parts thereof as may from time to time be required for that purpose, shall be surveyed and subdivided into lots or plats of such size as the trustees may direct, with such avenues, paths, alleys, and walks, as the trustees deem proper; and a map or maps of such surveys shall be filed in the office of the County Recorder of the County in which the land shall be situated. And after filing such map, the trustees may sell and convey the lots or plats designated upon such map, upon such terms as shall be agreed upon, and subject to such conditions and restrictions, to be inserted in or annexed to the conveyances, as the trustees shall prescribe. The conveyances to be executed under the common seal of the association and signed by the president or vice president, and the treasurer of the association. Any association incorporated under this Act, may hold personal property to an amount not exceeding $5,000, besides what may arise from the sale of lots or plats." (Sec. 4.) Except as restricted or limited in the section just quoted, the statute does not contain any expressed restriction or limitaton upon the power of the association to sell its real estate. On the other hand, the provisions quoted from section 3, as well as portions of section 4, clearly vested in the association power to purchase at least 320 acres. [2] When, as here, a corpo-

ration clearly has the power to purchase and own land, it has the same right as a natural person to sell such land. This is so because the most important attributes of a natural person are his absolute dominion over his property and his right of disposition thereof and the same may be said of a corporation aggregate as to its corporate property. (*Hearst* v. *Putnam Min. Co.*, 28 Utah, 184 [107 Am. St. Rep. 698, 704, 708, 66 L. R. A. 784, 77 Pac. 753]; 14a C. J. 521, sec. 2416.)

[3] As to lots in which bodies had been interred, and as to lands which had been mapped and platted, the map recorded, and from which maps lots had been sold, it is quite patent that the statute never contemplated that such lands should be sold except as provided expressly by the statute; on the other hand, such property was " . . . to be held and occupied exclusively for a cemetery for the burial of the dead." However, when that is stated, the full purpose of the act is stated. But when, by ordinance or statute, a cemetery is closed so far as the interment of bodies in the future, then and in that event the statute does not purport to extend the rule.

[4] The passage contained in section 4, *supra*, "Such land, or such parts thereof as may from time to time be required for that purpose, shall be surveyed and subdivided into lots or plats of such size as the trustees may direct, with such avenues, paths, alleys, and walks, as the trustees deem proper; and a map or maps of such surveys shall be filed in the office of the County Recorder of the County in which the land shall be situated. And after filing such map the trustees may sell and convey the lots or plats designated upon such map, upon such terms as shall be agreed upon," etc., is a passage that is commonly contained in acts authorizing the creation of public cemeteries and church grounds. It is also commonly found in statutes providing for the regulation of the sale of town lots, the dedication of streets and the dedication of public squares. He who would assert that a dedication has been made must show that all of the calls of the statute have been followed because such provisions have been held to be of the substance of the creation of a dedication. (*Woodyer* v. *Hadden*, 5 Taunt. (Eng.) 125; *Town of Pawlet* v. *Clark*, 9 Cranch (U. S.), 292 [3 L. Ed. 735]; *McConnell* v. *Town of Lexington*, 12 Wheat. (U. S.)

582, 585, 586 [6 L. Ed. 735] ; *Beatty* v. *Kurtz*, 2 Pet. (U. S.) 566 [7 L. Ed. 521] ; *Price* v. *Methodist Church*, 4 Ohio, 515, 543.)

It will be borne in mind that the statute before us was enacted when the constitution of 1849 was in effect. Under section 4 of the statute the association was authorized to purchase not exceeding 320 acres and under the same section it was authorized to hold personal property to an amount not exceeding $5,000, besides what may arise from the sale of lots or plats. Under section 9 of the statute it was authorized to take and hold any property, real or personal, bequeathed or given upon trust to apply the income to the improvement, etc., of the cemetery. Finally, under section 10, it was provided: "The cemetery-lands and property of any association, formed pursuant to this Act, shall be exempt from all public taxes, rates, and assessments, and shall not be liable to be sold on execution, or be applied in payment of debts due from any individual proprietors. But the proprietors of lots, or plats in such cemeteries, their heirs, or devisees, may hold the same exempt therefrom, so long as the same may remain dedicated to the purpose of a cemetery; and, during that time, no street, road, avenue, or thoroughfare, shall be laid through such cemetery, or any part of the lands held by such association, for the purposes aforesaid, without the consent of the trustees of such association, except by special permission of the legislature of the state." Turning to the provisions regarding surveying, platting and recording, it becomes clear at a glance that the properties actually dedicated to cemetery purposes, and no others, are to become exempt. If any person should give or bequeath to the association a business block, or a farm, the income therefrom could be used for the beautification of the cemetery; but certainly no one would contend that the business block or farm were "cemetery lands" within the meaning of the exemption, nor that the business block or farm would be protected so that "no street, road, avenue or thoroughfare" should be laid through it. Under a statute quite similar in language it was held that the portion of the property not mapped and platted did not come within the meaning of such an exemption. (*Woodlawn Cemetery* v. *Everett*, 118 Mass. 354.) Under the same facts, doubtlessly the same rule would have been declared in California. (*Los*

*Angeles Co. F. C. Dist.* v. *Hamilton,* 177 Cal. 119, 130 [169 Pac. 1028]; *In re Bull,* 153 Cal. 715, 718 [96 Pac. 366].)

[5]    It is argued that if such lands as those described in the complaint are sold they may be used for unsightly purposes. That is true, but there is not a word in the statute to the effect that the association ever undertook the burden of controlling either the use of, or the future improvements on, properties adjacent to the cemeteries, whether such adjacent properties were once owned by the cemetery or otherwise.

It therefore appears to us that under the provisions of chapter 267 of the Statutes of 1859 the power existed under certain circumstances which would authorize the corporate authorities to sell the lands in question. When the codes were adopted the statute just mentioned was codified. (Civ. Code, secs. 608 et seq.) In the code sections no language was inserted which purported to take away the power. When, in 1889, section 615 was enacted it neither added to nor subtracted from the powers that already existed. That section merely purported to regulate the manner in which the power of sale might be exercised.

The appellants claim that section 615 of the Civil Code is unconstitutional if it is construed as granting the power of sale to the respondent when, in the absence of that section, the respondent would not have had the power, but in view of the construction which we have placed upon the provisions of section 615 of the Civil Code it is not necessary for us to dwell on that point.

As the whole subject before us is one purely of statutory construction, the holdings of other courts in other jurisdictions are of little assistance, but no case has been cited to us that is at variance with anything herein stated. (2 C. J., p. 58, sec. 19.)

The order appealed from is affirmed.

Langdon, P. J., and Nourse, J., concurred.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 6, 1925.

All the Justices present concurred.