[Civ. No. 5281. Fourth Dist. Dec. 11, 1956.]

CHRISTINE ROBAS et al., Appellants, v. O. M. ALLISON et al., Respondents.

Tony Geram for Appellants.

Henry F. Rager for Respondents.

*Assigned by Chairman of Judicial Council.

BARNARD, P. J.—This is an appeal from a judgment giving the defendants a prescriptive right of easement for roadway purposes over a portion of the property of the plaintiffs, and denying the plaintiffs' claim to a different roadway easement. The controversy is as to the location and width of a road in a mountain area.

By an amended complaint filed on December 9, 1953, the plaintiffs sought to quiet their title, as against Mr. and Mrs. Allison and several other defendants, to Lot 16 of a certain tract as shown on a recorded map. In a second cause of action it was alleged that plaintiffs' property abuts upon a right of way or easement which is 20 feet wide, and which is an easement or road known as "Lytle Lane"; that the Allisons own Lot 35 of this tract, which is on the opposite side of Lytle Lane and slightly to the north of plaintiffs' property; that in March, 1951, the Allisons erected a wall extending out into said easement and road, which constitutes an obstruction to the use of the road; that "the defendants in this action have constructed various and sundry obstructions along and upon said Lytle Lane and said easement" which interfere with plaintiffs' use of said easement; and that by reason of these facts the plaintiffs' access to their land has been completely cut off. The prayer was for a decree adjudging that plaintiffs are the owners of Lot 16, that the defendants have no interest therein, and that the defendants be enjoined from maintaining any obstruction to the use of said road, right of way or easement. The defendants answered denying the allegations of the amended complaint and, as a separate defense alleging an open and notorious use of a portion of plaintiffs' property as a right of way and road for more than five years, and claiming a prescriptive right to continue that use.

After a trial, judgment was entered for the defendants. Plaintiffs' motion for a new trial was granted. On the second trial, before a different judge, a judgment was again entered for the defendants. The plaintiffs have appealed from that judgment, the main contentions being that the evidence is insufficient to support the findings to the effect that they had no easement for road purposes over the 20 feet which was designated as "Lytle Lane" on the recorded map, except such part thereof as is included in the existing traveled road; and that since plaintiffs paid the taxes on the full Lot 16, including that portion being used as a part of the traveled road, the defendants are not entitled to a pre-

scriptive easement for roadway purposes over any portion of Lot 16.

A copy of the map showing the subdivision in which Lot 16 is located was introduced in evidence. That map, recorded in 1925, shows on its margin an order of the board of supervisors approving the map and the bond filed as security for the payment of taxes then a lien. It also shows a strip 20 feet wide marked "Lytle Lane" running from north to south through the tract, with lots on both sides, but does not show its connection with any public road. Lot 16, owned by the plaintiffs, is on the east side of that strip. Plaintiffs state that Lytle Lane, a dirt road, is a cul-de-sac and that its only exit and entry is north of their property and onto a roadway known as "Lytle Creek Road."

The Allisons built a house on their lot in 1944. A number of other houses were built on lots in this tract, at various dates before and after 1944. The plaintiffs bought Lot 16 from one of the defendants in May, 1950, built a house, and moved onto the premises in January, 1951.

At the request of the plaintiffs the county surveyor's office made a survey of the premises in question in April, 1951. The map of this survey was introduced in evidence. It shows the 20-foot strip marked on the original subdivision map as Lytle Lane, with the notation "Not dedicated." It shows the "traveled" road as covering the easterly part of the 20-foot strip and extending over on some of the lots on the east side of that strip. The traveled portion of the road is thus shown as 9 feet wide at the south side of Lot 16, and as 12 feet wide at a point some distance to the north of that lot. According to that map the traveled road covers a portion of the west end of Lot 16, which is 9 feet wide at the south side of that lot and 5 feet wide at the north side. It thus appears that the traveled road is a narrow road partly on the 20-foot strip designated on the subdivision map, and partly on the lots to the east of that strip.

The plaintiffs state that this was a slowly developing residential tract, and that as the tract developed the traveled portion of the road "tended to deviate in an easterly direction from the roadway as legally described." They admit that the evidence is conflicting as to when such deviation began and the amount of such deviation, and that the evidence is also conflicting as to whether the traveled road was the same at the time of and prior to plaintiffs' occupancy as it was at the trial. Disregarding the conflicts, there is ample

evidence that this road has existed in the same position for many years and since long before the plaintiffs purchased their property. The situation is not unusual for mountain areas, and the evidence justifies the inference that because of the lay of the land the main part of the 20-foot strip designated on the subdivision map could not well have been used for road purposes in front of plaintiffs' property without considerable grading, which was not done. This explains why the road as actually used deviated to the east from the position indicated on the subdivision map. Three witnesses testified that this traveled road, known as "Lytle Lane," has existed in the same location and position from 1926 or 1930 to the present time. Some six other witnesses testified that there had been no change in the road since 1944. The evidence was that the road as traveled has been clearly marked and defined, has been used by people living along that road for about 30 years, and that these persons were able to and did drive up and down the road to and from their homes.

As to plaintiffs' first cause of action the evidence is amply sufficient to support the court's findings and judgment, to the effect that the defendants are entitled to an easement over the westerly portion of Lot 16, being the portion which has been occupied by the existing road and used for road purposes for a period of many years. (*Van Amersfoort* v. *Young*, 105 Cal.App.2d 22 [232 P.2d 569].) ▮ The payment of taxes was not necessary to the existence of such an easement. In this connection the court correctly found and adjudged that all of the parties, both plaintiffs and defendants, have a prescriptive right of easement for a roadway and for purposes of ingress and egress over the traveled portion of the land as covered by the existing road.

With respect to the issues raised by their second cause of action, the plaintiffs contend that the court erred in finding that they were not entitled to an easement for road purposes over the 20-foot strip shown on the recorded map and marked "Lytle Lane." It is argued that there was either a publicly dedicated easement as to this strip or at least a private easement arising from an implied acceptance of the subdivider's offer to dedicate.

Under the law as it then existed, the approval of the map was not an acceptance of the road with a corresponding obligation on the part of the county to maintain the same. While no formal acceptance was necessary in order to show

a dedication for road purposes, it was necessary that responsible public officials show by their actions that the road had been taken over as a public road (*Union Transp. Co. v. Sacramento County,* 42 Cal.2d 235 [267 P.2d 10].) There was no sufficient evidence of any such action by county officials over a period of 30 years. The only evidence is that on one occasion a snow plow was run over this portion of the road. The snow plow was run over the traveled road as it had long existed, and not over the westerly portion of the strip which had not been used for road purposes. On that occasion the plaintiffs complained to the driver of the snow plow that he was plowing into the bank on their side. There was no sufficient evidence of an implied acceptance of the roadway on the part of the county. (*City of Anaheim v. Langenberger,* 134 Cal. 608 [66 P. 855].)

The recording of the subdivision map in 1925 constituted an offer to dedicate the 20-foot strip as a public road. There could, of course, be an implied acceptance of that offer on the part of the public by a sufficient use of the land for that purpose. This would apply, however, only to that part of the strip which was actually so used. ■ Whether such an implied acceptance appears is a question of fact. ■ The burden of proving such a dedication is on the party asserting it. (*Application of Laurel Hill Cemetery Assn.,* 73 Cal.App. 193 [238 P. 732].) ■ The fact of dedication must be proved clearly and unequivocally (*Burk v. City of Santa Cruz,* 163 Cal. 807 [127 P. 154].) More persuasive evidence of a dedication is needed where the land in question is in a sparsely settled open country district (*City of Los Angeles v. White,* 68 Cal.App.2d 192 [156 P.2d 54). This is especially true with respect to such a mountain area as that involved here, where different conditions prevail which are commonly accepted. This narrow road had existed in the same condition for many years and long before the plaintiffs purchased their property, and the evidence supports the court's findings and conclusions to the effect that they failed to sustain the burden resting upon them to show that they had acquired a right to claim an easement for road purposes on that part of the strip, designated as Lytle Lane on the subdivision map, which had never been used for road purposes during all those years.

Moreover, if this 20-foot strip were to be considered a public road, it has been held that where a party does not own to the center of the street an obstruction in the road

is a public nuisance, and a private person may seek to enjoin it only if it is especially injurious to him but not otherwise; and that the property owner cannot sue in such a case where his access to his property is not cut off and where his use of the street is merely interfered with in the same manner as is the use of the general public. (*Hogan* v. *Central Pac. R. R. Co.,* 71 Cal. 83 [11 P. 876]; *Bigley* v. *Nunan,* 53 Cal. 403; *Hitch* v. *Scholle,* 180 Cal. 467 [181 P. 657].)

The plaintiffs further contend that the defendants failed to prove their prescriptive right to the 20-foot strip designated as Lytle Lane on the subdivision map, or any part thereof; and that the court erred in failing to make a finding on the issue as to whether or not the defendants had adversely possessed a part of the land within that strip. No issue was presented by the pleadings as to whether the defendants had a prescriptive right to the strip in question or a part thereof, and no finding thereon was necessary. The judgment did not award any such easement or prescriptive right to the defendants. On the other hand, the effect of the findings and judgment was merely to hold that the defendants were entitled to an easement for road purposes over the western part of plaintiffs' property in accordance with the location of the road as it has long existed, and that the plaintiffs were not entitled to any easement with respect to that part of the 20-foot strip which had not been used as a part of the traveled road.

The findings are supported by the record, and the judgment is affirmed.

Griffin, J., and Mussell, J., concurred.

A petition for a rehearing was denied January 8, 1957, and appellants' petition for a hearing by the Supreme Court was denied February 6, 1957. Schauer, J., was of the opinion that the petition should be granted.