89 Mass. App. Ct. 677 (2016)    677

West Beit Olam Cemetery Corporation v. Board of Assessors of Wayland.

## WEST BEIT OLAM CEMETERY CORPORATION *VS.* BOARD OF ASSESSORS OF WAYLAND.

No. 15-P-128.

Suffolk. April 8, 2016. - July 7, 2016.

Present: KAFKER, C.J., WOLOHOJIAN, & MALDONADO, JJ.

*Cemetery. Taxation*, Real estate tax: exemption, cemetery.

The appellate tax board properly denied a tax exemption sought by a religious nonprofit cemetery corporation under G. L. c. 59, § 5, Twelfth, for a large part of a lot and a building located on it, where the undisputed facts found by the board established that no burials or interments had taken place on the parcel, and the parcel and building were contractually restricted to residential use for seven years, including the tax year in question. [681-686]

APPEAL from a decision of the Appellate Tax Board.

*Sander A. Rikleen* for the taxpayer.

*Mark J. Lanza* for board of assessors of Wayland.

KAFKER, C.J. This is an appeal from a decision of the Appellate Tax Board (board) by West Beit Olam Cemetery Corporation (West Beit Olam), a nonprofit corporation organized in accordance with G. L. c. 114.[1] West Beit Olam is the record owner of lot 1A, located at 59 Old Sudbury Road in Wayland (town). In 2012, pursuant to G. L. c. 59, § 5, Twelfth (Clause Twelfth), West Beit Olam applied to the town's board of assessors (assessors) for a tax abatement for lot 1A.[2] The assessors denied the application, and West Beit Olam appealed to the board. After an evidentiary hearing, the board determined that a portion of lot 1A, known as parcel A, was exempt under Clause Twelfth, but the rest of the property was taxable. West Beit Olam appeals, claiming that all of lot 1A is exempt from taxation under Clause Twelfth. For the reasons discussed below, we affirm the board's decision. In

---

[1] General Laws c. 114 governs the organization of cemetery corporations.

[2] General Laws c. 59, § 5, Twelfth, as appearing in St. 1966, c. 262, exempts from taxation "[c]emeteries, tombs and rights of burial, so long as dedicated to the burial of the dead, and buildings owned by religious nonprofit corporations and used exclusively in the administration of such cemeteries, tombs and rights of burial."

particular, we conclude that the board properly denied a tax exemption for the large part of lot 1A and a building located on it that were contractually restricted to residential use for seven years, including the tax year in question.

1. *Background.* We summarize the facts as the board found them, noting that they are essentially undisputed by the parties. In 1998, the Jewish Cemetery Association of Massachusetts, Inc. (JCAM), a nonprofit cemetery corporation, purchased property in the town and created the Beit Olam Cemetery. As part of that purchase, JCAM also secured a right of first refusal on an adjoining parcel, lot 1A, which is the focus of this appeal. Lot 1A is contiguous to the Beit Olam Cemetery's western border and is improved with a single-family residence.

To accommodate the future expansion of the Beit Olam Cemetery, JCAM created West Beit Olam in 2007 for the purpose of acquiring lot 1A. On July 26, 2007, West Beit Olam purchased lot 1A for $1.3 million.[3] Although West Beit Olam thought this price well exceeded market value, it was viewed as a necessary expense to ensure that the Beit Olam Cemetery could expand onto adjoining property in the future.

Shortly after purchasing lot 1A, West Beit Olam created a cemetery development plan depicting the intended design of the future cemetery expansion on lot 1A. West Beit Olam also secured statutory approvals required by G. L. c. 114, § 34, from the town meeting and the board of health to use lot 1A for burials. However, at the time of the board's decision, lot 1A had not been dedicated as a cemetery in accordance with Jewish law and tradition, and no interments had been conducted on the land.

Concomitant with West Beit Olam's purchase of lot 1A, JCAM endeavored to establish a private access road to the East Beit Olam Cemetery, another of its cemeteries located on a non-contiguous parcel to the east of the Beit Olam Cemetery. To this end, JCAM purchased a property at 44 Concord Road, which is adjacent to the East Beit Olam Cemetery and was owned by Janette Howland (Howland) and her husband. In exchange for the Concord Road property, JCAM paid a total purchase price of $410,000, of which $210,000 was paid to Howland "in the form of housing as set forth in the Cemetery Caretaker Agreement."

---

[3]Although JCAM created West Beit Olam for the purpose of purchasing lot 1A, JCAM is not a named party to this case, and West Beit Olam was the only taxpayer that filed for an abatement concerning lot 1A. Furthermore, West Beit Olam is the record owner of lot 1A.

89 Mass. App. Ct. 677 (2016)      679

West Beit Olam Cemetery Corporation v. Board of Assessors of Wayland.

The "Cemetery Caretaker Agreement" (caretaker agreement) grants to Howland and her family the right to live for seven years (until October 14, 2017), "rent-free," in the house located on lot 1A. The caretaker agreement describes the grant of "rent-free" occupation to Howland "as consideration for the sale of the [Howland] Property."[4] The caretaker agreement designates Howland as the "on site caretaker for the Beit Olam Cemetery, East Beit Olam Cemetery, and West Beit Olam Cemetery (if such cemetery is developed for burials)" for the duration of the agreement, and mandates two duties: that she continuously "occupy the Premises for residential purposes only," and "caus[e] the gates at the Cemeteries to be opened and closed on a daily basis." The Beit Olam Cemetery and the East Beit Olam Cemetery are owned by JCAM.

The caretaker agreement reserves West Beit Olam's right to subdivide a specific area of lot 1A, designated as parcel A, for burial purposes at any time during the term of the agreement.[5] However, the caretaker agreement does not restrict Howland's ability to use the rest of lot 1A for residential purposes. The caretaker agreement also allows West Beit Olam to install an irrigation well on lot 1A "for the purpose of watering the Beit Olam Cemetery and any future expansion thereof," so long as the well does not "unreasonably interfere with Howland's occupancy of the Premises."[6] West Beit Olam installed an irrigation well on the western-most portion of lot 1A in 2011. The well has the capacity to irrigate the existing Beit Olam Cemetery and a future cemetery on lot 1A. The well has not been used to irrigate lot 1A or otherwise prepare it for burials.

Shortly after executing the caretaker agreement, Howland and her family moved into the house on lot 1A, and she began her caretaking duties of daily opening and closing the cemetery gates at the Beit Olam and East Beit Olam cemeteries. The board found that she also provided additional services to these JCAM cemeteries, but none involved substantial landscaping or mainte-

---

[4]The terms of the caretaker agreement further provide that "[a]s an inducement to the sale by Howland of the Concord Road property and in exchange for the services described herein, West Beit Olam has agreed to provide housing for Howland for a period of seven (7) years at no cost to Howland."

[5]Parcel A is an 11,466 square foot rectangular section situated on the eastern-most portion of lot 1A, bordering the original Beit Olam Cemetery. It accounts for 15.2 percent of lot 1A's total area.

[6]The caretaker agreement also permits any of West Beit Olam's "affiliates" to install the irrigation well.

nance.[7] Extensive landscaping, caretaking, and burial prepara-
tions for the JCAM cemeteries were performed by outside
vendors, not Howland. The board further found that Howland
lacked training, education, or experience in cemetery landscap-
ing, maintenance, or administration. Further, she neither listed her
occupation in the town census as cemetery caretaker, nor was she
an employee of West Beit Olam.

The board found that the majority of lot 1A and the house were
not entitled to the Clause Twelfth exemption. The board con-
cluded that the property and house were used primarily for
residential purposes and that Howland performed minimal cem-
etery-related services. However, the board determined that parcel
A was exempt under Clause Twelfth because West Beit Olam
specifically reserved it for cemetery purposes throughout the term
of the caretaker agreement. Further, the board determined that
West Beit Olam sufficiently demonstrated that parcel A was
dedicated to the burial of the dead. The board issued a final
abatement of $812.38 for the land constituting parcel A.

2. *Standard of review.* Property tax "[e]xemption statutes are
strictly construed, and the burden lies with the party seeking an
exemption to demonstrate that it qualifies according to the ex-
press terms or the necessary implication of a statute providing the
exemption." *New England Forestry Foundation, Inc.* v. *Assessors
of Hawley*, 468 Mass. 138, 148 (2014) (*New England Forestry*).
Moreover, "[a]ny doubt in the application of an exemption statute
operates against the party claiming tax exemption." *Mount Au-
burn Hosp.* v. *Assessors of Watertown*, 55 Mass. App. Ct. 611,
616 (2002).

In reviewing the board's decision, "we affirm findings of
fact . . . that are supported by substantial evidence." *Regency
Transp., Inc.* v. *Commissioner of Rev.*, 473 Mass. 459, 464 (2016).
See *New Boston Garden Corp.* v. *Assessors of Boston*, 383 Mass.
456, 465 (1981). Substantial evidence is "such evidence as a
reasonable mind might accept as adequate to support a conclu-
sion." *Boston Gas Co.* v. *Assessors of Boston*, 458 Mass. 715, 721
(2011), quoting from *Tennessee Gas Pipeline Co.* v. *Assessors of
Agawam*, 428 Mass. 261, 262 (1998). "We review conclusions of
law, including questions of statutory construction, de novo." *New

---

[7]The board found that Howland also placed and removed American flags at
gravesites during certain times of the year, patrolled the cemeteries during the
day, wiped down benches, contacted animal control when neighborhood dogs
disrupted funerals, and reported required maintenance issues in the cemeteries.

*England Forestry*, 468 Mass. at 149. However, we accord "some deference to the board's expertise in interpreting the tax laws of the Commonwealth." *Schussel* v. *Commissioner of Rev.*, 472 Mass. 83, 87 (2015) (quotations omitted).

3. *Discussion.* Clause Twelfth, as appearing in St. 1966, c. 262, exempts from local property taxation "[c]emeteries, tombs and rights of burial, so long as dedicated to the burial of the dead, and buildings owned by religious nonprofit corporations and used exclusively in the administration of such cemeteries, tombs and rights of burial." The question we must thus answer is whether lot 1A was "dedicated to the burial of the dead" during tax year 2012.[8] G. L. c. 59, §§ 5, 11. As the undisputed facts found by the board establish, no burials or interments have taken place on lot 1A. Moreover, the board found that in tax year 2012, lot 1A, with the exception of parcel A, was contractually restricted to the Howlands' residential use "with no interference" by West Beit Olam, thereby precluding burials on most of the property. We conclude that under these circumstances, lot 1A, with the exception of parcel A, is not entitled to a tax exemption for tax year 2012. We so hold even though the property was purchased for future use as a cemetery, the arrangement with the Howlands presently benefits other cemetery parcels owned by a different taxpayer (JCAM), and Howland performs a minimal amount of cemetery-related work for those other properties.

a. *Application of Clause Twelfth to lot 1A.* Property taxes are assessed on a yearly basis. G. L. c. 59, § 11. Accordingly, the focus of this tax exemption inquiry pursuant to Clause Twelfth is on the circumstances of the land during the relevant assessment period, although future plans for the land may also be taken into account. *Assessors of Sharon* v. *Knollwood Cemetery*, 355 Mass. 584, 590 (1969) (*Knollwood*) ("This language of [C]lause Twelfth indicates to us that the statute, as a basis of exemption, looks to the situation at the time of assessment despite the possibility of future change"). See G. L. c. 59, § 5 (date of determination for whether property is exempt from taxation is July 1 of

___

[8]General Laws c. 59, § 11, provides that "[t]axes on real estate shall be assessed, in the town where it lies, to the person who is the owner on January first, and the person appearing of record . . . shall be held to be the true owner thereof." West Beit Olam, not JCAM, was the taxpayer of record of lot 1A. See *Middlesex Retirement Sys., LLC* v. *Assessors of Billerica*, 453 Mass. 495, 500 (2009) (legal entity created to acquire property and designated as record owner was party subject to taxation even though it was wholly owned and operated by tax-exempt regional retirement system).

each year). See *New England Forestry*, 468 Mass. at 149 (whether property is tax exempt depends on owner's use of it "during the relevant tax year").

The caretaker agreement is critical to our analysis of the situation of lot 1A at the time of assessment because it dictates what uses West Beit Olam could make of lot 1A for tax year 2012. As the board found, the caretaker agreement establishes Howland's continuous occupancy of the greater part of the property for "residential purposes," "with no interference" by West Beit Olam except for reasonable inspection. With the exception of parcel A and the installation of the irrigation well, the caretaker agreement also precludes West Beit Olam from actively developing the land for "cemetery purposes" during the term of the agreement. Thus, during the tax year in question, the property was contractually dedicated to residential use, not burials or other cemetery-related activity. The latter is effectively prohibited. None of the cases cited by West Beit Olam provides an exemption to property that has been contractually restricted to noncemetery-related purposes during the relevant time period. Compare *Knollwood*, 355 Mass. at 590 (agreement concerning property "restricts use to cemetery purposes").

There was also substantial evidence to support the board's findings that Howland's cemetery-related duties were minimal. She was not in any way a full-time cemetery caretaker. Providing a residence for Howland and her family at no cost and requiring minimal services are very different from providing a residence for a person substantially engaged in taking care of a cemetery. Cf. *Woodlawn Cemetery* v. *Everett*, 118 Mass. 354, 363 (1875) (*Woodlawn*) (court nonetheless denied tax exemption where house occupied by cemetery gardener). The actual caretaking and administrative duties for the Beit Olam and East Beit Olam cemeteries were provided by outside contractors and employees of JCAM. Furthermore, the very limited cemetery-related duties Howland performed were not performed on lot 1A, the property at issue, or for West Beit Olam, the taxpayer at issue.

The question then becomes whether West Beit Olam's intent to develop lot 1A into a cemetery in the future entitles it to a tax exemption for lot 1A for tax year 2012. We conclude that, in the circumstances of this case, it does not. Unlike the cases upon which West Beit Olam relies, the taxpayer here was contractually precluded from undertaking burial-related activities on the property during the tax year in question.

The Supreme Judicial Court has stated that Clause "Twelfth, cannot reasonably be interpreted as requiring that, to qualify for exemption, *all* land acquired (with municipal consent) for burial purposes must be developed at one time." *Knollwood*, 355 Mass. at 589. Rather "[i]t must be expected that a cemetery corporation . . . will prudently develop its property in an orderly fashion as the need for doing so arises." *Ibid.* However, where no interments have taken place on the subject property, the taxpayer must demonstrate that the property has been dedicated for burial purposes through "planning and substantial actual use" of the land to prepare it for burials or other activities "necessary for, administration and operation of the cemetery." *Id.* at 589-590.

It is well established that land is not dedicated to the burial of the dead by "[a] mere dedication or appropriation on paper." *Woodlawn*, 118 Mass. at 361. See *Knollwood*, 355 Mass. at 588-589. Similarly, "minor use of the purchased land for activities incidental to a cemetery d[oes] not constitute 'dedication of such land . . . for . . . a . . . burial place.' " *Ibid.*, quoting from *Woodlawn*, *supra.*

The facts of the relevant cases are instructive. In *Woodlawn*, after the principal cemetery had been developed, a property purchased for future cemetery use was determined not to be dedicated to the burial of the dead because "no part of th[at] land ha[d] been used for burials or divided off or laid into lots or permanent avenues, and that no attempt ha[d] been made to sell it for purposes of burial." 118 Mass. at 362. Even "the occupation of a house by the cemetery gardener, the storage of cemetery supplies and the conduct of a hothouse and an evergreen nursery" were found insufficient under the statute. *Knollwood* 355 Mass. at 588, citing *Woodlawn*, 118 Mass. at 357.

In contrast, the court in *Knollwood*, 355 Mass. at 589, concluded that a taxpayer's large tract of land was sufficiently dedicated to the burial of the dead by its substantial actual use of a portion of the subject land to prepare it for burials, although some portions remained undeveloped. By demonstrating that its use of the land was for "cemetery purposes," which entailed interments, development of the land for future burials, and the sale of 42,566 burial spaces, the taxpayer sufficiently dedicated all of the land to the burial of the dead. *Ibid.* The court concluded that "[s]imilar considerations apply to buildings on the cemetery land and a tree nursery used in, and necessary for, administration and operation of the cemetery." *Id.* at 590.

Finally, in *Blue Hill Cemetery, Inc.* v. *Assessors of Braintree*, 2 Mass. App. Ct. 602, 603 (1974) (*Blue Hill*), the court affirmed the board's decision granting a tax exemption for property not prepared for burial but containing an administration building, a pump house for cemetery irrigation, two garages for cemetery vehicles and equipment, a caretaker's house, and a nursery that provided shrubs and flowers for the cemetery. The parties stipulated that the property at issue was "used . . . for the operation of the cemetery and to supply services closely connected therewith." *Id.* at 604. The taxpayer cemetery also owned a larger parcel of land across the street from the subject property, which was used "exclusively for the actual interment of bodies and [was] exempt from taxation." *Id.* at 603. See *Woodlawn*, 118 Mass. at 362 (taxpayer cemetery corporation owned adjoining land to subject property, where more than 8,000 burials had occurred); *Knollwood*, 355 Mass. at 586 (9.78 acres of land actively prepared for burial and 42,566 burial spaces sold by taxpayer).

As previously noted, it is undisputed that West Beit Olam took certain limited prefatory steps to enable the future development of a cemetery on lot 1A, notably, creating a cemetery plan and securing the statutory approvals to conduct burials. See G. L. c. 114, § 34. However, these actions are not the type of substantial use of the land for burials or cemetery-related activities found in either *Knollwood* or *Blue Hills*. See *Knollwood*, 355 Mass. at 589 ("Very considerable development and use of large parts of the land for burials have taken place"); *Blue Hills*, 2 Mass. App. Ct. at 606 ("The stipulation of the parties and the findings of the board make clear that the . . . land is used predominantly for cemetery purposes"). Indeed there is less cemetery-related activity here than in *Woodlawn*. See 118 Mass. at 362. Most importantly, the property here was contractually reserved for residential purposes during the tax year in question. The fact that West Beit Olam is precluded from dedicating the land to the burial of the dead underscores why lot 1A is markedly different from the properties in *Woodlawn*, *Knollwood*, or *Blue Hills*, where the tax payers were not restricted from developing the properties for burial or other necessary cemetery-related purposes during the relevant tax year. See *Woodlawn*, 118 Mass. at 361; *Knollwood*, 355 Mass. at 587-589; *Blue Hill*, 2 Mass. App. Ct. at 606 (partial abatement granted for property usable for cemetery purposes, but denied for wetlands not usable for burial of bodies).

West Beit Olam's installation of the irrigation well on lot 1A does not change this conclusion. Installation of the well does not

alter the predominately residential nature of lot 1A. See *Wood-lawn*, 118 Mass. at 362 (preliminary actions "to be ultimately used in preparing and ornamenting a cemetery, [are] no dedication of such land itself for the purposes of a cemetery").[9] As provided in the caretaker agreement, "[a]ny such well shall be installed so as not to unreasonably interfere with Howland's occupancy of the Premises" for residential purposes. During the relevant tax year, the primary cemetery-related purpose of the irrigation well was to provide an incidental benefit to separate land, the Beit Olam Cemetery, owned by JCAM, a different, albeit related, taxpayer. This is not sufficient under Clause Twelfth to warrant a tax exemption for the majority of lot 1A, particularly when that land itself is not dedicated to the burial of the dead, but rather restricted to noncemetery related purposes. See *New England Forestry*, 468 Mass. at 148. See also *Knollwood*, 355 Mass. at 587-589.

West Beit Olam also argues that lot 1A is sufficiently dedicated to the burial of the dead because the property was "used" as partial consideration for the purchase of the Howlands' home on Concord Road for access to the East Beit Olam Cemetery. Essentially West Beit Olam is claiming that lot 1A should be exempt from taxation because it provides an economic benefit that furthers the over-all cemetery purposes of a related corporation, JCAM. This type of indirect economic benefit to a related cemetery corporation has too attenuated a connection to the dedicated use of lot 1A for the burial of the dead to justify a tax exemption under Clause Twelfth, at least where the use of lot 1A itself is contractually restricted primarily to noncemetery-related purposes during the relevant tax year. To hold otherwise would be a significant expansion of what uses constitutes a "dedication" of land under Clause Twelfth. Given that tax exemption statutes are to be strictly construed, we conclude that West Beit Olam's interpretation is unsupported by the plain language of Clause Twelfth. See *New England Forestry*, 468 Mass. at 148.

In sum, West Beit Olam has failed to demonstrate that the majority of lot 1A is dedicated to the burial of the dead. More-

---

[9]Testimony before the board indicated that the immediate purpose of the lot 1A well was to irrigate the Beit Olam Cemetery as a result of a town water restriction which limited Beit Olam Cemetery's use of a well on its property that drew from the town water supply. The lot 1A well was installed with the capacity to irrigate both the Beit Olam Cemetery and a future cemetery on lot 1A, but there is nothing indicating that the well is currently used for the benefit of lot 1A.

over, the caretaker agreement's preclusive effect ensures that lot 1A, aside from parcel A, is currently dedicated to residential purposes until October 14, 2017.

b. *The house on lot 1A and the caretaker agreement.* We also conclude that the house on lot 1A does not satisfy the statutory requirements for tax exemption under Clause Twelfth. Clause Twelfth plainly distinguishes between the tax treatment of "cemeteries, tombs and rights of burial" on the one hand, and "buildings" on the other. See *Bridgewater State Univ. Foundation* v. *Assessors of Bridgewater*, 463 Mass. 154, 158 (2012) (rule that statute's plain language must be interpreted with usual and natural meaning of words has particular force in interpreting tax statutes). The statute requires that in order for buildings on cemetery property to be exempt from taxation, they must be used exclusively in the administration of the cemetery. The board's conclusion that the house here is not "used exclusively in the administration of such cemeteries, tombs and rights of burial" is supported by substantial evidence. Indeed as explained above, the house is used primarily for residential purposes, and during the tax year in question, the house was restricted to such use. The exemption for the house was therefore properly denied.

*Conclusion.* West Beit Olam has failed to demonstrate that lot 1A, with the exception of parcel A, is entitled to an exemption pursuant to Clause Twelfth for tax year 2012. Accordingly, we affirm the board's decision.

*So ordered.*