ETHRIDGE, Chief Justice:
This case involves the power of a corporate trustee of certain cemetery land, operated for profit, to sell an undeveloped, distinct part of the land which its predecessor purchased. The Chancery Court of Harrison County held that appellee, Perpetual Care Cemeteries, Inc., (called Perpetual Care) had express authority to convey the east 275 feet of land owned by it in the City of Biloxi, free and clear of any restrictions as to the use to which that tract may be devoted. Even if no express authority existed, the chancery court authorized and directed the sale in order to preserve the purposes for which the trust in the property was created, the preservation of the remaining portion laid out and developed as a cemetery. We affirm on both conclusions.
In 1932 Mrs. Mary C. Holmes owned this land, which fronts for 754 feet on the Mississippi Sound and is 1160 feet in depth. For a substantial consideration she executed simultaneously two instruments. Conveying this land to R. H. Holmes, “Trustee, for Southern Memorial Park, a common-law trust,” the deed recited:
The other consideration mentioned in the above conveyance, is the covenant and agreement, that the property herein conveyed, shall be, and will be used by the said trustee and his successors in title, as trustees, of said Southern Memorial Park, as a public burial ground or memorial park to be owned, operated, maintained and perpetuated for burial or interment of persons * * *
The other instrument was a declaration of trust, which recited that the trustee intended to engage in the purchase, sale and general development of a cemetery, designated as a “business * * * enterprise.” The declaration of trust did not identify any specific property to be used for burial purposes. The trustee was given broad powers with respect to all of the trust property, his major restriction being the obligation “to manage and dispose of the same for the benefit of the holders from time to time of the certificates of shares issued and to be issued” under the provisions of the trust. The declaration of trust gave the trustee the express power to borrow money and to mortgage the property, and:
To sell and convey, or otherwise use and deal in, on such terms as he shall think fit, the whole or any part of the trust properties.
The declaration of trust further provided that the trustee could “acquire, own, hold, dispose of, sell, mortgage, bond or encumber or otherwise deal in real estate * * * ” The trustee was given power generally to conduct the trust “in any manner that the trustee shall deem fit * * * ” Since the deed and the declaration of trust were executed and recorded at the same time and pertain to the same purposes, they must be read and interpreted together.
Following execution of these instruments, beneficial shares in the common-law trust were issued, and the west portion of the property was developed for cemetery purposes by selling off lots and using grave spaces. However, in the east 275 feet no lots were ever platted, no roads or walkways were laid out, and that area was not cleared of undergrowth. No grave spaces in the east 275 feet were ever sold, and no persons were ever interred in that part. Some of the remaining portion of the property was divided into units, lots and burial spaces, and interment rights were sold therein. Through mesne conveyances, O’Keefe as trustee sold this property in 1954 to O’Keefe individually. That instrument recited that there had been established a perpetual maintenance trust fund, and that the trustee had obligated himself to pay into the trust fund twenty percent of the sale price “of all lots or plots hereinafter sold in said cemetery, when the sale has been completed and deed issued.” O’Keefe then conveyed the property to Southern Memorial Park, Inc., for $10,000, and this instrument also referred to the *797 twenty percent perpetual care fund. In 1960 the capital stock of Southern Memorial Park, Inc., was sold to Perpetual Care, and Southern Memorial Park was dissolved, thus vesting all interests in Perpetual Care.
When Perpetual Care purchased this property there was a debt from Southern Memorial Park, Inc., to the trust fund of $9,000, which Perpetual Care paid into the trust on that date. From 1960 to 1965, however, a debt of Perpetual Care to the trust fund accrued in the amount of $51,000. Apparently the reason for this large deficiency arose from losses resulting from Perpetual Care’s ownership and unsuccessful operation of several other cemeteries and a monument company. In 1965 H. H. Burnett became president of Perpetual Care, with the purpose of extricating the corporation from its financial difficulties, and a new policy was begun of setting aside twenty percent of the sale price of burial spaces when they were first contracted to be sold.
A multitude of serious financial problems faced Burnett when he became president in October 1965. In addition to the debt to the trust fund, there were also substantial obligations on federal taxes, to the Small Business Administration of $162,000, to a bank in excess of $27,000, and numerous other debts to banks and common creditors. Perpetual Care’s total obligations exceeded $270,000, over and above the debt to the perpetual care trust. The SBA note was secured by the first deed of trust on the east 250 feet of the property and on the entire beach front. Both a bank mortgagee and SBA were threatening foreclosure.
Perpetual Care Cemeteries, Inc., filed a petition in 1966 with certain class defendants, asking the chancery court to remove from the east 275 feet of the tract owned by petitioner the cloud of any alleged dedication for cemetery purposes. In January 1967 the chancery court entered its decree finding no dedication as to the east 275 feet, removing the cloud of the alleged dedication, and approving a proposed sale of the east tract. In June 1968 petitioner filed its report and an additional petition. The proposed sale of the east 275 feet had not been consummated, but another sale of the entire property had been bound by contract. Notice was published to all persons having interment rights in the cemetery proper that they were represented by N. C. Holmes as class representative, but advising them of their right to intervene and to appear and participate in the hearing. A number of holders of interment rights, who are now the appellants, intervened, and after a full trial the chancery court rendered a comprehensive opinion and decree. It removed from the east 275 feet the cloud of an alleged dedication, approved the proposed sale of the east 275 feet without restrictions, and authorized sale of the remainder with protections for continuance and maintenance of the cemetery proper.
There has never been a dedication of the east 275 feet of the land owned by Perpetual Care. The essential elements of a dedication are not present. It must be to the public. There can be no dedication to private uses. See Morgan v. Collins School House, 160 Miss. 321, 133 So. 675 (1931). Neither the declaration of trust nor the deed used the word “dedicate” or any substantially similar term. Both instruments were grants to a private trustee and not the public. The declaration of trust recites that the trustee is to hold for the benefit of the shareholders, not for the benefit of the public. Moreover, in a dedication no control over the property can be retained, but here control by the trustee was not relinquished. 23 Am.Jur.2d Dedication §§ 1, 5,d7 (1965).
The declaration of trust clearly gave the trustee the unrestricted power to sell the property conveyed to him as trustee, namely, the east 275 feet, without a limitation in the title conveyed. Although the grantor indicated an intent that a cemetery would be created by the trustee, this *798 was a mere directive to him; no grant was made to the public. When the two instruments are read together, the trustee is authorized to sell a part of the land and to create a cemetery out of the remainder. Cf. Stokely v. State ex rel. Knox, Atty.Gen., 149 Miss. 435, 115 So. 563 (1928); Laurel Hill Cemetery Ass’n. v. Sargent, 73 Cal.App. 193, 238 P. 732 (1925).
 Finally, even assuming Perpetual Care as trustee has no express power to sell, the sale of the east 275 feet was properly authorized by the chancery court in order to preserve the purposes of the original trust. The business owned by Perpetual Care was in extreme financial difficulties, and the property was threatened with foreclosure. Courts of equity have inherent power to protect trusts and may order a sale of part of the trust property, if such action is necessary for execution of the trust purposes. In Re Hart’s Estate, 206 Miss. 498, 40 So.2d 263 (1949); Corley v. Bishop, 101 Miss. 490, 58 So. 360 (1911); 2 Scott on Trusts § 190.4 (3d ed 1967). The undisputed evidence here justified the chancery court in authorizing unrestricted sale of the east 275 feet. With the proposed sale completed, all liens on burial grounds will be released, they will be perpetually dedicated for cemetery purposes only, a trust fund of over $131,000 will be created to perpetually maintain the park, and funds will be available for continued operation of the cemetery proper. See Miss.Code 1942 Ann. §§ 5308-01 to 5308-13 (Supp.1968).
N. C. Holmes has cross-appealed, asserting that the chancery court should have charged both Perpetual Care and The First National Bank of Biloxi as trustee of the perpetual care fund for the large deficiencies in that fund. This contention has no merit for several reasons. The decree made no ruling on these charges in Holmes’ cross-bill, and the issue was not raised again until his cross-appeal. Moreover, the declaration of trust between Perpetual Care and the bank imposed no duty on it to pursue and collect funds for payment into the perpetual care trust fund. The bank only had the obligation to deal as a trustee with funds deposited with it. As to Perpetual Care Cemeteries, Inc., the chancellor made no finding of misappropriation of funds. The O’Keefe document, creating an obligation to place twenty percent of the sale price of plots in the cemetery, when fully paid for and deed delivered, into a perpetual care trust, did not impress a trust on proceeds of the sale of cemetery lots, but it created a debt. 1 Scott on Trusts §§ 12.1, 12.2 (3d ed. 1967).
Affirmed on direct and cross-appeals.
JONES, BRADY, INZER and ROBERTSON, JJ., concur.