317 So.2d 38 (1975)
MAGNOLIA MEMORIAL GARDENS, INC., et al.
v.
William L. DENTON and Nancy Lee Dixon Thompson et al.
No. 48090.
Supreme Court of Mississippi.
July 7, 1975.
Jean D. Muirhead, Roland C. Lewis, Jackson, for appellants.
Aultman, Pope, Aultman, Van Slyke & Tyner, Hattiesburg, Wells, Gerald, Brand, Watters & Cox, Jackson, Gray, Montague & Jackson, Moore, Jones & Moore, Travis & Travis, Hattiesburg, William E. Andrews, Jr., Purvis, R.L. Calhoun, Milton A. Schlesinger, Hattiesburg, Guy & Dowdy, McComb, Francis T. Zachary, Hattiesburg, for appellees.
Before RODGERS, INZER and WALKER, JJ.
*39 INZER, Justice.
This is an appeal by Magnolia Memorial Gardens, Inc. and others from a decree of the Chancery Court of Lamar County sustaining a general demurrer and a special demurrer to their bill of complaint seeking to cancel the claims of appellees to certain lands as clouds upon the title of the corporation. We affirm.
The bill of complaint alleged that Magnolia Memorial Gardens, Inc. was the owner in fee simple of about forty acres of land in the possession of and claimed by the defendants by virtue of certain deeds. It was alleged that the land was placed in irrevocable trust and that the defendants *40 acquired no title to the land by virtue of their deeds.
The original bill, the amendments thereto, and exhibits reveal that Magnolia Memorial Gardens, Inc. is a Mississippi corporation organized for profit. Its charter authorized it to "purchase, acquire, own, lease, let, sell, convey, mortgage, encumber, and deal with land, personal property and real, and real and personal property interests; ... and to develop, own, and manage, perpetual care cemeteries... ." On February 2, 1956, it purchased the following described land in Lamar County:
SW 1/4 of SE 1/4 and N 1/2 of SE 1/4 of SE 1/4 of Section 11, Township 4 North, Range 14 West containing 60 acres, more or less.
At the time of the purchase Luther B. Dixon and his wife Nancy Lee Dixon were the sole stockholders and officers of the corporation. On February 17, 1956, they as trustees entered into a financial agreement with L.H. Williams whereby they proposed to enter into an agreement with Magnolia Memorial Gardens, Inc. for the acquisition and development of a tract of land to be used as a perpetual care cemetery. By the terms of this agreement Williams was to advance $10,000 to be repaid by ten percent of the purchase price of the lots to be sold in the cemetery. The trustees agreed that all the stock of Magnolia Memorial Gardens, Inc. would be placed in escrow until the debt was repaid. No contention is made in the bill of complaint that this debt was not paid and Williams is not a party to this lawsuit.
On April 30, 1956, Magnolia Memorial Gardens, Inc. filed for public record a plat of a part of the 60 acres as a cemetery to be called Garden of Christus. No part of this land so platted is involved in this lawsuit. On May 10, 1956, an irrevocable trust agreement between Magnolia Memorial Gardens, Inc. and Luther B. Dixon as trustee was executed and filed for record. In part this agreement is as follows:
This TRUST AGREEMENT made and entered into on this 10th day of May, 1956, by and between MAGNOLIA MEMORIAL GARDENS, a corporation organized and existing under the laws of the State of Mississippi, and domiciled at Hattiesburg, Forrest County, Mississippi, hereinafter designated as The Company and Luther B. Dixon of Lamar County, Mississippi, hereinafter designated as Trustee;
WITNESSETH:
WHEREAS, the Company is the owner of a certain parcel of land situated on Highway 98 in Lamar County, Mississippi, and described as:
SW 1/4 of SE 1/4 and N 1/2 of SE 1/4 of SE 1/4 of Section 11, Township 4 North, Range 14 West, containing 60 acres, more or less.
WHEREAS, a portion of said land has been conveyed and dedicated for the sole use as a burial ground of deceased persons, or a cemetery, the development thereof as a cemetery to be known as MAGNOLIA MEMORIAL GARDENS. The plat thereof has been duly filed in the Office of the Chancery Clerk of Lamar County, Mississippi, as required by law which is called "Garden of the Christus" and plans are being made for further development of other cemetery gardens on said above described land;
WHEREAS, the Company desires to establish a series of trust funds to be known as "The Perpetual Care and Maintenance Fund of Magnolia Memorial Gardens", said funds to be used as a perpetual care and maintenance fund for said burial grounds and cemetery, the buildings, road and improvements now located thereon, or which may be subsequently established and becoming a part hereof. That said fund should be established with a trustee, separate and apart from all other funds, property or securities which now belong to the Company or may be hereinafter acquired by it, to *41 be forever conserved for the perpetual care and maintenance of the property, Magnolia Memorial Gardens, as above referred to and which has been dedicated, or may be dedicated, as a cemetery under the following conditions, provisions and covenants:
By the terms of this agreement the corporation was required to deposit with the trustee not less than ten percent of the contract price of deeds conveying burial rights in the Magnolia Memorial Gardens, Inc. as a trust fund for the perpetual care of the cemetery property. The agreement then spelled out the rights and duties of the trustees and provided that in the event the trustees resigned or died the chancery court was to appoint a successor trustee. The trustee was required to account to the court for its actions. The only thing placed in trust by this agreement was at least ten percent of the sales price of each lot.
On October 15, 1959, Luther B. Dixon, as president of the corporation, and his wife, as secretary, executed a special warranty deed conveying to himself and wife as individuals five acres out of the remaining land.
On January 21, 1960, Magnolia Memorial Gardens, Inc. executed and filed for record a plat of some more of its land for cemetery purposes which was designated as "Sermon on the Mount." None of this land is involved in this lawsuit.
On October 27, 1960, Luther B. Dixon and his wife, as officers of the corporation, executed a special warranty deed to himself and his wife as individuals conveying approximately 35 more acres of the land involved in this lawsuit. All the land acquired by virtue of the two deeds from the corporation was conveyed by Dixon and his wife by numerous deeds and is now in the possession of the appellees. The land has been developed and its status now appears to be that of a subdivision and an apartment building.
According to the allegations of the amended bill the assessment rolls for the year 1958 and 1959 show that the sixty acres owned by the Magnolia Memorial Gardens, Inc. was not taxed but was assessed as a cemetery. The assessment roll reflects that after the execution of the deeds to Dixon and his wife the land conveyed was taxed.
The bill of complaint also charges that Dixon represented to the public and prospective purchasers that the entire sixty acres was to be developed as a series of perpetual care cemeteries. The bill also charges that Luther B. Dixon died on April 12, 1967, and on March 13, 1970, by a decree of the Chancery Court of Lamar County, William L. Denton, one of the appellees, acquired all of the stock in Magnolia Memorial Gardens, Inc. On March 8, 1971, William L. Denton transferred all the outstanding stock in the corporation to Gerald E. Haynes who was on March 26, 1971, appointed trustee of the perpetual care and maintenance fund of Magnolia Memorial Gardens. Thereafter on June 20, 1972, he as president of the corporation and as trustee filed this bill of complaint. It was joined in by eleven owners of grave spaces in that part set aside as a cemetery to cancel all deeds, deeds of trust, easements and claims of the present owners of the forty acres involved in this lawsuit.
A general demurrer was imposed to the original bill and it was sustained. Appellants then amended alleging that there had been a common law dedication by the corporation of the entire sixty acres as a public cemetery, and consequently, the corporation could not revoke the dedication and deed away the land. To the amended bill the appellees filed a general demurrer and also a special demurrer invoking the ten year statute of limitations, laches and other grounds. The trial court sustained the general demurrer and the special demurrer. Appellants declined to plead further, hence this appeal.
*42 Appellants contend that the allegations of the bill of complaint are sufficient to withstand the general demurrer and rely on a common law dedication of the entire sixty acres as a public cemetery. They also seem to rely in some extent on the trust agreement referred to above. However, this agreement shows on its face that only a portion of the sixty acres has been dedicated for the sole use as a burial ground and that plats of that portion so dedicated have been filed in the chancery clerk's office. It also indicated that plans were being made for the further development of other cemetery gardens on the sixty acres, but it falls far short of dedicating the remainder of the sixty acres as a public cemetery. Appellants also argue that the fact that the sixty acres was assessed as a cemetery for the years 1958 and 1959 and not taxed constitute a dedication of the entire sixty acres as a cemetery. Under the statute land used solely for cemetery purposes is exempt from taxation. At the most this indicates only an intention on the part of the landowner to use the land for burial purposes, but does not constitute a common law dedication of the land for that purpose.
In order to constitute a dedication at common law, it is essential that there be an intention of the owner of the land to donate the same for public use. It has been said that the controlling element of the common law dedication is the intent to donate. Donation is the act by which the owner of something voluntarily transfers the title and possession of the same without any consideration. The bill of complaint in this case does not allege that the corporation intended to donate or give this land to the public as a burial ground. The facts alleged in the bill show to the contrary. The corporation was engaged in the business, among other things, of selling burial spaces in that part of its land that had been platted and set aside for cemetery purposes. None of the land involved in this lawsuit was ever so platted and dedicated. There is nothing alleged in the bill of complaint that tends to show the corporation ever intended to give any part of its land to the public for cemetery purposes.
Furthermore, another essential element of a dedication is that it shall be for the public at large, not to one person or a limited number of persons or for the exclusive use of a restrictive group of individuals. Garland v. Clark, 264 Ala. 402, 88 So.2d 367 (1956); Sundstrom v. Oak Park, 374 Ill. 632, 30 N.E.2d 58, 131 A.L.R. 1465 (1940); Hengen v. Perpetual Care Cemeteries, Inc., 230 So.2d 795 (Miss. 1970); 23 Am.Jur.2d Dedications §§ 1 and 5 (1965). It is clear from the bill of complaint and the exhibits that there was no intention on the part of the corporation to dedicate the land in question to the public at large for a cemetery. Even the lots sold for burial purposes were restrictive in that no interment could ever be made except for the remains of white or caucasian race. The corporation still had title to the land that it had platted and recorded for cemetery purposes. It could select the individuals to whom it would sell burial spaces. Of course, when the corporation platted the land that was dedicated for cemetery purposes, filed the plat of record and then sold lots therein, that part of the land could not be used for any other purpose. We hold that the bill of complaint shows on its face that there was no common law dedication of the land in question and the corporation had a right to convey the land and it saw fit to convey the property to its president and secretary as individuals. They were the sole stockholders and officers of the corporation. Only the stockholders and creditors of the corporation could question the conveyance. This they did not do. The present president and sole stockholder of the corporation now seeks to set aside these conveyances. He had no interest in the corporation either as a stockholder or creditor at the time the deeds were executed. When he acquired all of the stock of the corporation, he only acquired the assets owned by the corporation and was bound by the deeds executed by the corporation ten *43 years prior to the date of his acquisition of the corporation.
Insofar as the holders of burial spaces are concerned, they never acquired any interest in the property except the burial spaces deeded to them and the right to have the funds in the hands of the trustee of the perpetual care fund used for the purpose for which it was set up. The bill of complaint seems to indicate that the funds have been mismanaged and dissipated. This does not give the owners of burial spaces any right of action against appellees in the absence of common law dedication or a trust.
We are of the opinion that the chancellor was correct in sustaining the general demurrer. This makes it unnecessary for us to consider the special demurrer.
For the reasons stated, this case must be and is affirmed.
Affirmed.
GILLESPIE, C.J., and PATTERSON, SMITH, ROBERTSON, SUGG and BROOM, JJ., concur.