IRVING, J.,
 

 for the Court:
 

 PROCEDURAL HISTORY
 

 ¶ 1. Following a motor vehicle accident with Bonny Wilson, Angela Stokes obtained a default judgment in the amount of $525,000 against Wilson and against Nell Morgan d/b/a Jackson County Memorial Gardens Cemetery.
 
 [1]
 
 This judgment was
 
 *669
 
 promptly enrolled among the land records of Jackson County. A little over a year after Stokes enrolled the judgment against Morgan, a cemetery owned by Morgan became insolvent and went into receivership.
 

 ¶2. Although the receivership action is captioned: “Gulf South Perpetual Care Cemeteries Corporation d/b/a Jackson County Memorial Park,” neither the record nor the parties have established positively that the cemetery has never been known, or referred to, as Jackson County Memorial Gardens or that it has always been referred to as Jackson County Perpetual Care Cemetery. From our examination of the record and the oral arguments of the parties, we find that the cemetery that went into receivership has been known or referred to at various periods of time by several different names: Jackson County Memorial Park; Jackson County Memorial Park Perpetual Care Cemetery (Memorial Park); Jackson County Memorial Parks, Inc.; Gulf South Perpetual Care Cemeteries Corp. (also referred to sometimes as Gulf South Perpetual Care Cemeteries, Inc.); and Jackson County Memorial Gardens (Memorial Gardens). We also find that throughout the cemetery’s existence, only two corporations, Jackson County Memorial Parks, Inc. and Gulf South Perpetual Care Cemeteries Corp., have been involved in its administration and that at the commencement of the receivership, neither of these corporations owned any interest in the cemetery. In fact, as will be discussed later, neither of these corporations was in existence when the cemetery went into receivership.
 

 113. After the cemetery that was owned by Morgan went into receivership, Stokes filed a claim in the receivership action, contending that as a result of her having enrolled her judgment against Morgan, a lien had attached to all property owned by Morgan. Stokes further argued that any of Morgan’s property that was seized or otherwise acquired in the receivership was acquired or seized subject to her judgment lien.
 

 ¶ 4. A little over three months after the cemetery went into receivership, Morgan quitclaimed unto the Chancery Clerk of Jackson County “for purposes of that in-terpleader action [the receivership] filed in Jackson County Chancery Court” all of her interest in the cemetery as well as her interest in the unplatted portion of the tract of land out of which the cemetery had been platted. The entire tract, including the platted and unplatted parts, is comprised of 22.7 acres.
 

 ¶ 5. The chancellor denied Stokes’s claim, finding that she is not entitled to a priority lien against any of Morgan’s property that is involved in the receivership, because the circuit court judgment “fails to name ‘Jackson County Memorial Park’ as the real party in interest.” The chancellor also stated that if he were willing to look past what he called “this fatal deficiency,” he would still reach the same result because even though the property upon which Stokes sought to impress the lien had never been officially platted or dedicated as a cemetery, it nevertheless had been de facto dedicated and was being held in trust by Morgan for the benefit of the public. The chancellor determined that this was the case because neither Morgan nor any of her predecessors in title had ever paid taxes on it. Aggrieved, Stokes appeals and asserts that the chan-
 
 *670
 
 eery court erred in denying her claim.
 
 [2]
 

 ¶ 6. We find, based on the authority of
 
 Magnolia Memorial Gardens, Inc. v. Denton,
 
 317 So.2d 38 (Miss.1975), that that portion of Morgan’s property which has never been officially platted and dedicated as a public cemetery has not become a public cemetery nor has it been impressed with a constructive trust for the benefit of the public simply because it has been accorded tax-exempt status by the tax assessor. Therefore, we reverse and render the judgment of the chancery court and remand this case for further proceedings.
 

 FACTS
 

 ¶ 7. In 1962, a charter of incorporation of Jackson County Memorial Parks, Inc. was filed in the Office of the Secretary of State and approved. However, this corporation was administratively dissolved on May 1, 1989. In 1967, articles of incorporation of Gulf South Perpetual Care Cemeteries Corp. (Gulf South) were filed with the Secretary of State, and a certificate of incorporation was issued. This corporation was administratively dissolved in 1995. There is no record of either of these corporations being reactivated. Also, the record does not indicate that Memorial Gardens was ever incorporated or owned any land. The record does reflect that in 1967, Arvis Cumbest acquired title to the entire 22.7-acre tract as a result of a foreclosure on an entity known as “Jackson County Memorial Park, Inc.” Therefore, we surmise that at one point, Memorial Park may have held title to the entire 22.7-acre tract, although nothing else in the record substantiates this.
 

 ¶ 8. As a result of various conveyances from individuals and from Gulf South Perpetual Care Cemeteries, Inc., beginning in 1971 and ending in 2001, Morgan became the owner of the 22.7-acre tract of land in Jackson County, Mississippi. When Morgan received her first deed, which conveyed a one-half interest in the 22.7-acre tract, a portion of the tract had already been subdivided and platted into cemetery lots known as Memorial Park. The various title instruments conveyed to Morgan all equipment of Memorial Park, including furnishings, furniture, fixtures, and tools, all contracts of sale entered into between Memorial Park and prospective purchasers involving lots in the cemetery, and all contracts subsequently entered into between the cemetery and prospective purchasers.
 

 ¶ 9. As stated, Stokes filed a claim in the receivership proceedings. This claim did not target any of the assets of Memorial Park that are used in the day-to-day operations of the cemetery, or the perpetual care fund that is required by law to be maintained by perpetual-care cemeteries. Rather, the claim targeted the real property lying adjacent to the cemetery that was owned by Morgan. That property had never been officially platted and dedicated as a cemetery, but it may have been viewed by the public as a part of the cemetery because of its proximity to the platted area which, admittedly, is a cemetery. In other words, Stokes’s position in the receivership proceedings was, as it is here, that her judgment was against Morgan, not against the assets of the ceme
 
 *671
 
 tery, as the cemetery does not own the property in question.
 

 ANALYSIS AND DISCUSSION OF THE ISSUES
 

 ¶ 10. We state at the outset that we presume the cemetery in receivership is Jackson County Memorial Park Perpetual Care Cemetery, and we find that this is the same cemetery that is referred to in the circuit court’s judgment as Jackson County Memorial Gardens, even though, as will be explained later, the chancellor inexplicably placed significant weight on the name discrepancy. We make this finding because the parties have neither indicated otherwise nor argued that the chancellor’s judgment should be affirmed on the basis that the cemetery referred to in the circuit court’s judgment is a different cemetery than the one involved in the receivership. Moreover, the parties do not dispute that the cemetery in the receivership may at some point have been referred to as Jackson County Memorial Gardens, and they certainly do not suggest that Morgan was involved with, or the owner of, two separate and distinct cemeteries, one named Memorial Park and one named Memorial Gardens.
 

 ¶ 11. We now address the crux of our finding that the chancellor erred in refusing to accord priority status to the claim filed by Stokes in the receivership action. Neither Memorial Park nor Memorial Gardens is a corporation. Therefore, neither was, or could be, a real party in interest, as neither owned, or could own, any interest in the real property that Morgan quitclaimed in conjunction with the interpleader or receivership action. Having said this, we are mindful that, according to the parties, there are platted but unsold burial plots in Memorial Park. The existence of these plots, however, does not make the cemetery a real party in interest, because, as stated, an unincorporated cemetery cannot own real property or, for that matter, anything else. Unsold burial plots in a cemetery are owned by the person or entity that owns and administers the operation of the cemetery. In this case, that person was Morgan. Therefore, in the judgment rendered by the circuit court, the doing-business-as Memorial Gardens language that follows Morgan’s name does not transform the judgment into a judgment against Memorial Gardens to the exclusion of Morgan. The judgment is against Morgan, and after it was properly enrolled, it, by operation of law, effectuated a hen against all unexempt real property that Morgan owned. We, therefore, find that the chancellor erred as a matter of law in finding that the judgment’s failure to “name Memorial Park as the real party in interest [rendered it] ineffective against ... assets held [in the receivership].” We agree, however, with the chancellor that the judgment is ineffective against Memorial Park, but that is because Memorial Park owns nothing, not because it was not named as a real party in interest in the judgment.
 

 ¶ 12. The chancellor considered
 
 Denton
 
 but concluded that
 
 Denton
 
 is inapplicable “because the property in the instant case has been dedicated for use as a cemetery and is held in trust for that purpose.” We presume that the chancellor meant that a de facto dedication had occurred, because there is nothing in this record reflecting a metes and bounds description of Memorial Park as encompassing the unplatted portion of the tract that was owned by Morgan. We note that counsel for the Trust Fund stated during oral argument that ever since the 1950s, the unplatted portion of the 22.7-acre tract has been considered a part of the cemetery; yet he was unable to produce any document showing that to be the case, not even a plat of the cerne-
 
 *672
 
 tery. On this point, we note that the record indicates that the platted portions of the cemetery are recorded in Plat Book 2, page 88 and Plat Book 13, page 18 of the land records of Jackson County, but the parties did not make those plats a part of the record on appeal. All parties agree that there is unplatted land, which was owned by Morgan at the time of Stokes’s judgment, that is adjacent to the platted sections.
 

 ¶ 18. In
 
 Denton,
 
 the Mississippi Supreme Court considered whether portions of a tract of land initially owned by a corporation under tax-exempt status for use as a cemetery were required to be used as a cemetery. Stated another way, the
 
 Denton
 
 court was called upon to decide if any of the unplatted portion of property initially held in tax-exempt status as a cemetery could later be conveyed to private individuals and used for non-cemetery purposes. The issue was presented to the court following a procedural ruling in the trial court. The trial court sustained a general and special demurrer to a bill of complaint which sought to cancel certain deeds as a cloud upon the title of Magnolia Memorial Gardens, Inc. (Magnolia Memorial).
 
 Denton,
 
 317 So.2d at 39.
 

 ¶ 14. As stated, we find that
 
 Denton
 
 requires a reversal of the judgment rendered by the chancery court. To demonstrate why such is the case, we begin with a recitation of the
 
 Denton
 
 facts. On February 2, 1956, Magnolia Memorial, a Mississippi corporation wholly owned by Luther B. Dixon and his wife Nancy Lee Dixon, purchased sixty acres of land, to be used as a cemetery.
 
 Id.
 
 at 40. On April 30, 1956, Magnolia Memorial “filed for public record a plat of a part of the [sixty] acres as a cemetery to be called Garden of Christus.”
 
 Id.
 
 On October 15, 1959, the Dixons, acting on behalf of Magnolia Memorial, conveyed to themselves, by a special warranty deed, five acres of the remaining acreage of the sixty-acre tract.
 
 Id.
 
 at 41. On January 21, 1960, Magnolia Memorial “executed and filed for record a plat of some more of its land for cemetery purposes which was designated as ‘Sermon on the Mount.’ ”
 
 Id.
 
 Then on October 27, 1960, the Dixons, acting for and on behalf of Magnolia Memorial, executed a special warranty deed to themselves conveying approximately thirty-five more acres of the original sixty-acre tract.
 
 Id.
 
 The entire sixty-acre tract was shown on the land assessment rolls for the years 1958 and 1959 as being tax-exempt as a cemetery. Id. After the sales to the Dixons, the portions that had been conveyed to them were taxed.
 
 Id.
 

 ¶ 15. The bill of complaint to which the trial court had sustained the demurrers alleged that as a result of common-law dedication, the entire sixty-acre tract had been placed in an irrevocable trust and that the Dixons and their successors in title had “acquired no title to the land by virtue of their deeds.”
 
 Id.
 
 at 39-40, 42. The bill of complaint further alleged that the Dixons “represented to the public and prospective purchasers that the entire sixty acres was [sic] to be developed as a series of perpetual care cemeteries.”
 
 Id.
 
 at 41. The appellants in Denton
 
 [3]
 
 also argued “that the fact that the sixty acres was [sic] assessed as a cemetery for the years 1958 and 1959 and not taxed eonsti-tute[d] a dedication of the entire sixty acres as a cemetery.”
 
 Id.
 
 at 42.
 

 
 *673
 
 ¶ 16. In rejecting the appellants’ claim that the entire sixty-acre tract had been dedicated as a cemetery under the common law because it had received tax-exempt treatment as a cemetery for a number of years, the
 
 Denton
 
 court explained that that fact “[a]t the most indicate[d] only an intention on the part of the landowner to use the land for burial purposes, but [did] not constitute a common[-]law dedication of the land for that purpose.”
 
 Id.
 
 The court then explained the requirements for a common-law dedication:
 

 On [sie] order to constitute a dedication at common law, it is essential that there be an intention of the owner of the land to donate the same for public use. It has been said that the controlling element of the common law dedication is the intent to donate. Donation is the act by which the owner of something voluntarily transfers the title and possession of the same without any consideration .... [Magnolia Memorial] was engaged in the business, among other things, of selling burial spaces in that part of its land that had been platted and set aside for cemetery purposes.
 
 None of the land involved in this lawsuit was ever so platted and dedicated.
 
 There is nothing alleged in the bill of complaint that tends to show [that Magnolia Memorial] ever intended to give any part of its land to the public for cemetery purposes.
 

 Id.
 
 (emphasis added).
 

 ¶ 17. The facts in our case and those in
 
 Denton
 
 are strikingly similar. The only dissimilarities are, that in our case, the entire tract is owned by an individual rather than a corporation, the unplatted portion has remained untaxed, and the unplat-ted portion of the tract was never sold to another. We find these differences to be immaterial, because the
 
 Denton
 
 court makes clear that according tax-exempt status to land that is expected to be used as a cemetery does not transform the land into a cemetery if it is never platted and dedicated as such. As noted, the entire sixty-acre tract in
 
 Denton
 
 was tax exempt for a period of time and listed on the land rolls as a cemetery. Also, as in
 
 Denton,
 
 there is nothing in our case to indicate that Morgan intended to donate the remainder of her 22.7-acre tract to the public for use as a cemetery.
 

 ¶ 18. We are constrained by precedent to find — notwithstanding the long period of time that the unplatted portion of Morgan’s property escaped taxation — that the property did not become a cemetery. It necessarily follows that since the property belonged to Morgan, it was subject to any judgment liens that may have befallen Morgan during the course of her personal and business dealings. Accordingly, we reverse and render the judgment of the Chancery Court of Jackson County and remand this case to the chancery court with directions to honor Stokes’s judgment lien in the order that it would have been entitled to had Morgan not relinquished her property as a part of the receivership.
 

 ¶ 19. THE JUDGMENT OF THE CHANCERY COURT OF JACKSON COUNTY IS REVERSED AND RENDERED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEES.
 

 KING, C.J., LEE AND MYERS, P.JJ., GRIFFIS, BARNES, ROBERTS AND MAXWELL, JJ., CONCUR. CARLTON, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. ISHEE, J., NOT PARTICIPATING.
 

 [1]
 

 .
 
 The judgment was obtained in an
 
 action
 
 that was filed in the Circuit Court of Jackson County, and those pleadings are not a part of the record in this case. However, it appears
 
 *669
 
 that Morgan was sued on the theory that Wilson was acting within the course and scope of her employment, as Morgan’s employee, at the time of the accident.
 

 [2]
 

 . As the caption of this case reflects, Jamie R. Dent and the Jackson County Memorial Park Perpetual Care Trust Fund are parties to this appeal. Dent was appointed receiver for the cemetery by the chancellor. It is not clear from the record whether he also serves as a trustee for the Trust Fund. But the record reflects that the trustees who were serving when the cemetery went into receivership were allowed to resign. In any event, this appeal does not seek to attach any of the funds of the Trust Fund, and nothing in this opinion should be construed as such.
 

 [3]
 

 . The individual appellants are Gerald E. Haynes, who acquired all of the outstanding stock of Magnolia Memorial from William L. Denton, and eleven owners of grave spaces in the platted sections of the original sixty-acre tract.
 
 Id.
 
 at 41. Denton acquired all of the outstanding stock of Magnolia Memorial following Luther’s death.
 
 Id.
 
 When the bill of complaint was hied, Haynes was president of Magnolia Memorial and trustee of the Magnolia Memorial Perpetual Care Trust Fund.
 
 Id.