# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2022-CA-01227-SCT

*NEWTON COUNTY, MISSISSIPPI*

*v.*

*DEERFIELD ESTATES SUBDIVISION*
*PROPERTY OWNERS ASSOCIATION, LLC*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/27/2022 |
| TRIAL JUDGE: | HON. H. DAVID CLARK, II |
| TRIAL COURT ATTORNEYS: | JAY MAX KILPATRICK |
| | ROBERT MARTIN ALLEN, JR. |
| | WILLIAM ROBERT ALLEN |
| | JASON AVERY MANGUM |
| | LANCE WESLEY MARTIN |
| COURT FROM WHICH APPEALED: | NEWTON COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | WILLIAM ROBERT ALLEN |
| | JASON AVERY MANGUM |
| | LANCE WESLEY MARTIN |
| ATTORNEY FOR APPELLEE: | JAY MAX KILPATRICK |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED - 05/09/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE KITCHENS, P.J., COLEMAN AND GRIFFIS, JJ.**

**KITCHENS, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     This case presents the question of whether the main roads within a subdivision are private or public roads. In 2001, the Newton County Board of Supervisors entered into its minutes that it had voted unanimously to accept the two main roads of the Deerfield Estates subdivision into the Newton County road system. However, the roads never were added to the official county road registry. In 2020, the subdivision filed a complaint seeking a

declaratory judgment that the roads are public roads and seeking an injunction mandating the county to add them to the registry and to perform repairs. Following a trial, the chancellor held that the roads had become public roads via express common law dedication and ordered that the roads be added to the county map and road register.[1] The chancellor's decision is affirmed.

## FACTS AND PROCEDURAL BACKGROUND

¶2. On August 3, 2001, the developers of Deerfield Estates subdivision sent a letter to the Newton County Board of Supervisors explaining that it had platted and subdivided the subdivision property and had constructed and paved two roads through the subdivision. The letter then stated, "[w]e submit these roads to you and request that you accept them as part of your road system in the County." The property is located in Beat 3[2] of Newton County. Milton Smith, Beat 3 supervisor at the time, inspected the roads and then recommended that the board accept them. At the board's meeting on August 13, 2001, the supervisors voted unanimously to accept the two subdivision roads as county roads. The minutes reflect:

### Acceptance of Lake View Drive and Deerfield Lane as County Roads

Motion by Milton Smith, seconded by Kenneth Harris to accept Deerfield Lane and Lake View Drive into the Newton County Road system. Deerfield lane is .064 miles and Lake View Drive is .537 miles in length. Motion carried unanimously.

---

[1] The chancellor declined to order the county to repair the roads, holding that the issue was not ripe for adjudication.

[2] In this context, *beat* means a county supervisor's district.

The development contemplated serving approximately thirteen to sixteen homes, and two homes had been built at the time the board accepted the dedication.

¶3.     Robin Bauer and Denise Bauer were successors to the original developer's interest in the subdivision. In 2010, the Bauers conveyed a permanent easement to the county covering the roads in question and consisting of approximately 4.3 acres. The conveyance opens with the following paragraph:

> WHEREAS, on August 13, 2001, the Board of Supervisors of Newton County, Mississippi, did meet and unanimously accept Lake View Drive (.537 miles) and Deerfield Lane (.064 miles) as County Roads, all as shown by the board minutes attached hereto as Exhibit "A", made a part hereof as if copied in full herein and recorded in Book 68 at Page 575, in the office of the Chancery Clerk of Newton County, Mississippi.

The easement was recorded.[3] In a separate conveyance, the Bauers conveyed the roads to the owners' association via a warranty deed, subject to the county's easement. Since the recording of the easement, the county has never assessed taxes to the owners' association for the roads.

¶4.     The Deerfield Estates homeowners' association was formed in 2009. The minutes of the association's organizational meeting note: "[w]e discussed the repairs needed on our road. Our road is a county road and we talked about waiting till more homes were built before asking the county to repair it." Subsequent minutes continue to reflect the residents' belief that the roads were county roads. However, by 2012, the association minutes reflected

---

[3] The chancery clerk accepted and recorded the easement. The present board of supervisors claims not to have become aware of it until years later.

3

that confusion existed over whether the roads were private or public because they had not been entered into the county road register.

¶5.     In 2015, association member Brodie Cooper approached county officials on behalf of residents, seeking county resources to conduct repairs. Charles Moulds had succeeded Milton Smith as Beat 3 supervisor.[4] In 2015, four of the five board members (excluding Smith) and the county engineer inspected the Deerfield roads. The engineer prepared a report estimating that it would cost more than $100,000 to repair them. Without providing notice to Deerfield residents that the matter would be considered, the board determined at a December 2015 meeting to "not accept" the Deerfield roads as public roads. The minutes reflect:

### Deerfield Lane and Lakeview Drive Not accepted into County Road Inventory

The board attorney presented a written report from the County Engineer & supervisors concerning the condition of the road surrounding Deerfield and Lakeview Roads in Beat #3. The engineer personally inspected and provided a cost estimate for reconstructing the existing roads. He analyzed the existing roads and subsurface and found that the subsurface is inadequate and, therefore, the surface does not meet State Aid Specifications. The estimated repair cost would be $106,228.00. Supervisors #1, #2, #4, and #5 were appointed per Miss. Code Ann. Sec 65-7-57 to examine and view the contemplated route of the road and make a report to the entire Board of Supervisors at its next meeting. On or about November 10, 2015 the above beat supervisors, Beats 1, 2,4, and 5 examined the Roads known as Lakeview Drive and Deerfield Lane located just west of Union, Mississippi off Highway 492 and found the following: (1) Road bed is inadequate and in our opinion would need significant work to repair., (2) Dam on the East end seems to be compromised and would need to be totally reconstructed in order to maintain an adequate base., (3) An inadequate amount of asphalt was laid when built to be durable and is currently in disrepair., (4) Current utility lines would have to be moved in order to bring the road up to State Aid Specs: (5) The anticipated

---

[4] Moulds also preceded Smith as Beat 3 supervisor. Smith defeated Moulds for the position in 2000 and did not run for a second term. As of the commencement of this appeal, Moulds continues to serve as Beat 3 supervisor.

costs to properly repair and replace said roads would be significant. Due to these factors we do not feel that the acceptance of these roads would be in the best interest of the citizens of Newton County. Signed-_Kenneth Harris, Joe Alexander, L.M. Bonds, and Jimmy Johnson. Charles Moulds made a motion and Jimmy Johnson voiced a second to the motion that based on the findings of the County Engineer and the findings from the beat #1, 2, 4, & #5 supervisors that Beat #3 Newton County would not accept Deerfield Lane and Lakeview Drive as county roads. The motion carried unanimously.

¶6. In 2019, a local newspaper published a story on the state of disrepair of the roads and the bureaucratic dispute over whether the roads were public or private. That article referenced the 2015 board vote to "not accept" the roads. The residents testified that the publication of the 2019 article was the first time they became aware of the board's 2015 declaration that it did not accept the roads. In July 2020, Deerfield filed a complaint in chancery court seeking a declaratory judgment that the subdivision roads were county roads. The complaint included a request for injunctive relief, asking that the county be mandated to add Deerfield Lane and Lake View Drive to the official map of the county road system. It also sought a permanent injunction mandating the county "to allocate appropriate funding to immediately repair Deerfield Lane and Lake View Drive . . . ."

¶7. The county moved for summary judgment, arguing that Deerfield Estate's claims were barred by the doctrine of laches or by the general statute of limitations and, in the alternative, arguing substantively that the roads were private roads. The chancellor granted the county's motion for summary judgment partially, holding that neither prescription nor the statutory procedure of Mississippi Code Section 65-7-57 (Rev. 2021) had operated to convert the roads from private roads to public roads. However, the chancellor held that the question of whether the roads became public roads via common law dedication should proceed to trial. The

chancellor's order stated also that the motion for summary judgment "is denied and dismissed as to all remaining issues."[5]

¶8.     The chancellor entered a pretrial order articulating stipulated facts, disputed facts, and defining the issue to be litigated as:

> The sole matter to be tried is whether or not the actions of Newton County, Mississippi, acting through its duly-elected Supervisors, either by entry upon Board Minutes on August 13, 2001, or subsequent actions/inactions with respect to Deerfield Lane and Lakeview Drive are sufficient for adjudication that Deerfield Lane and Lakeview Drive are public roads for Newton County, Mississippi.

The stipulated facts included that the county has never assessed taxes on the rights of way for the roads and that Newton County has never performed any maintenance on them. The disputed or partially disputed facts included whether Newton County had provided culverts for Deerfield residents and whether the Deerfield street signs are green (indicating public roads) or red (indicating private roads).

¶9.     At trial, the court heard testimony from three current or former supervisors, several Deerfield residents, and the county's chancery clerk. Former supervisor Milton Smith testified that he believed the board's acceptance of the dedication through its minutes had been effective and that it served the public interest. He testified also that during his 2000-2004 term, the county accessed the Deerfield Estates subdivision during heavy rains to add

---

[5] While the chancellor's order did not analyze the county's affirmative defenses, this issue was argued extensively at the hearing on the motion for summary judgment.

riprap rock to a pond dam. He had authorized and supervised the work because he was concerned that if the dam gave way, it would cause damage to public roads downstream.[6]

¶10.    Charles Moulds, Beat 3 supervisor since 2004, testified.[7] He acknowledged that the estimated expense of the repairs was a significant factor in the board's 2015 decision to take the position that the Deerfield Estates roads were not public roads.[8] He acknowledged that the poor condition of the road over the dam could have a negative effect on county roads located downstream. He acknowledged further that the board had not given the residents of Deerfield Estates notice of its 2015 inspection of the roads, notice of the December 2015 meeting at which the board had voted that the roads were not accepted, or subsequent notice of the board's decision. He denied that the county had ever installed culverts for any resident in the subdivision. He also denied that the county had changed the color of the street signs from green to red.

¶11.    Beat 1 supervisor Kenneth Harris testified also.[9] Smith, Moulds, and Harris all testified that the county did not issue or keep records of work orders for activities like

---

[6] The dam is near the headwaters of the Conehatta Creek.

[7] The chancellor, in his final judgment, stated that Moulds's "testimony was quite evasive, at times farcical and otherwise unreliable."

[8] He also testified that the board currently has a policy that it will not accept roads unless the roads meet minimum state agency specifications, although as of trial, the occasion to enforce the policy has not risen.

[9] Supervisor Harris is the only current board member who also was a board member in 2001. When asked why he had voted to accept the subdivision roads in 2001 and then changed his vote in 2015 not to accept the roads, he said that he defers to each supervisor on matters related to his beat.

repairing the dam and installing the culverts. Moulds and Harris testified that they did not believe it was permissible for the county to allocate resources toward roads that were not on the official road registry; otherwise, they might be liable for audit scrutiny.

¶12.    Several Deerfield residents testified that over the years the county had routinely provided and installed culverts at new constructions in the subdivision where the roads meet the private driveways. They also testified that in either 2015 or 2016 Deerfield's green street signs became red signs. Residents described the public use of the subdivision roads. The subdivision is not gated and is routinely used by school buses, postal workers, package delivery services, garbage men, and law enforcement patrols. Families host church events in their homes and in a nearby field. Nonresidents drive through the subdivision to view a field where exotic animals are kept.

¶13.    The chancellor entered a final judgment holding that the subdivision roads "are, and have been since August 13, 2001, public roads by reason of express dedication and acceptance." In addition to the express acceptance in the board's 2001 minutes, the chancellor noted also the express 2010 acceptance and recording of the public easement, the circumstance that the county has not levied tax on the land occupied by the roads, and the access and use of the roads by the general public. The chancellor ordered the county "to include Deerfield Lane and Lakeview Drive on the county road map and to include Deerfield Lane and Lakeview Drive in the County Road Registry."[10] The county appeals.

---

[10] The chancellor found that the subdivision's request that the county be mandated to appropriate funds to repair the roads was not yet ripe for adjudication.

**STANDARD OF REVIEW**

¶14.   "The Court employs a limited standard of review on appeals from chancery court." *Reddell v. Reddell*, 696 So. 2d 287, 288 (Miss. 1997). "If substantial credible evidence supports the chancellor's decision, it will be affirmed." *Id.* (citing *Carrow v. Carrow*, 642 So. 2d 901, 904 (Miss. 1994)). "This Court will not reverse the chancellor's findings of fact "unless they are manifestly wrong, not supported by substantial credible evidence, or an erroneous legal standard was applied." *Bayview Land, Ltd. v. State ex rel. Clark*, 950 So. 2d 966, 971–72 (Miss. 2006) (citing *Columbia Land Dev., LLC v. Sec'y of State*, 868 So. 2d 1006, 1011 (Miss. 2004)). "A chancellor's conclusions of law will be reviewed *de novo*." *McBroom v. Jackson Cnty.*, 154 So. 3d 827, 831 (Miss. 2014) (quoting *Lowrey v. Lowrey*, 25 So. 3d 274, 285 (Miss. 2009)).

**DISCUSSION**

I.      **Whether the county accepted the roads via common law dedication.**

¶15.   Private roads can be converted into public roads through the mechanisms of prescription, dedication, or via statutory procedures. *Coleman v. Shipp*, 223 Miss. 516, 78 So. 2d 778, 784 (1955). Prescription is a common law process similar to adverse possession. *See George Cnty. ex rel. Bd. of Supervisors v. Davis*, 721 So. 2d 1101, 1107 (Miss. 1998). Mississippi Code Section 65-7-57 (Rev. 2021) provides a statutory procedure for petitioning a board of supervisors for accepting a road into the public system.[11] The parties agree that

---

[11] The statutory process requires a petition to the board of supervisors that must include the signatures of "ten or more freeholders or householders of the county interested in the road[.]" The petition must set "forth the commencement and termination and general course thereof and . . . that the public interest or convenience requires the road to be laid out

neither prescription nor the formal statutory procedure is applicable to this case. Therefore, the question is whether the two main roads of Deerfield Estates became public roads via common law dedication.

¶16.    Dedication occurs when a public authority accepts a land owner's donation of a right of way. *Coleman*, 78 So. 2d at 784. "The acceptance may be shown in two ways: first, by the formal act of the proper authority competent to speak and act for the public, or it may be implied from circumstances . . . ." *Hearn v. Morrow*, 272 So. 2d 645, 647 (Miss. 1973). Mississippi jurisprudence has long recognized that county boards of supervisors can accept offers of private land for public use. In *Kinnare v. Gregory*, 55 Miss. 612, 620-21 (1878), this Court held that when the owner of a freehold manifests his intention to devote a described road on his property to the use of the public, and the county Board of Supervisors, by a formal order declaring the road to be public, accepted the proffered easement, the road became a highway.

¶17.    "[W]hether a road becomes public by prescription or by dedication, the public interest or convenience should require that the same be established and maintained as a public road." *Coleman*, 78 So. 2d at 784. "Judicial review of the Board of Supervisor's decision concerning whether the public interest or convenience requires the establishment of a new road is limited to whether there was any reasonable basis for the board's action." *Davis*, 721

---

and open or altered or changed[.]" Miss. Code Ann. § 65-7-57. The existence of a statutory path for establishing public roads does not abrogate the common law dedication process. *See Coleman*, 78 So. 2d at 784.

10

So. 2d at 1106 (citing *Bd. of Supervisors, Tishomingo Cnty. v. Blissitt*, 200 Miss. 645, 657, 27 So. 2d 678, 680–81 (1946)).

¶18.    The county argues that the board's 2001 acceptance is void on its face because the minutes do not include a statement that the public interest or convenience requires acceptance of the dedication. It further argues that the roads serve too small a population to qualify as being for the public interest or convenience. We decline to hold that the absence of that exact language in the board's minutes renders void the board's acceptance of the common law dedication. However, it is accurate that the dedication must be for public convenience or necessity. *See Coleman*, 78 So. 2d at 784.[12] "There can be no dedication to private uses." *Hengen v. Perpetual Care Cemeteries, Inc.*, 230 So. 2d 795, 797 (Miss. 1970) (citing *Morgan v. Collins School House*, 160 Miss. 321, 133 So. 675 (1931)). Further, dedication cannot be for "a limited number of persons or for the exclusive use of a restrictive group of individuals." *Magnolia Mem'l Gardens, Inc. v. Denton*, 317 So. 2d 38, 42 (Miss. 1975) (citing *Hengen*, 230 So. 2d at 797). The cases cited by the county for examples of private, restricted uses mainly involve cemeteries. The nature of an open road is distinguishable in its potential to serve public interest or necessity, and judicial review of a board's determination to establish new roads is limited to "whether there was any reasonable basis for the board's action." *Davis*, 721 So. 2d at 1106 (quoting *Blissitt*, 27 So. 2d at 680-81). At trial, the subdivision elicited testimony from witnesses noting that many local county roads service a smaller number of mailboxes.

---

[12] Under the statutory procedure, the citizen petition must explain why acceptance of the road is required by public interest or convenience. Miss. Code Ann. § 65-7-57.

11

¶19. We agree with the chancellor that Newton County's express acceptance of the dedication of the Deerfield roads was effective in 2001. A board of supervisors speaks through its minutes. *Myers v. Blair*, 611 So. 2d 969, 972 (Miss. 1992). Entry of acceptance of the dedication was a "formal act of the proper authority competent to speak and act for the public." *Hearn*, 272 So. 2d at 647. On consideration of the testimony presented at trial, the chancellor did not err by determining that the dedication was for public convenience and necessity.

¶20. While a finding of implied dedication is unnecessary, we note additional circumstances indicating acceptance, including the county's failure to assess taxes on the roads following the recording of the easement,[13] the county's provision of culverts to new construction abutting the roads, the county's use of the road to facilitate dam maintenance, and the ongoing public access to and use of the ungated subdivision. *See McBroom*, 154 So. 3d at 837 (failure to assess taxes on a road and public use of a road are two key factors in implied dedication).

¶21. Mississippi Code Section 65-7-4 (Rev. 2021) provides:

> (1) On or before July 1, 2000, the board of supervisors of each county shall prepare and adopt an official map designating and delineating all public roads on the county road system. Changes to the county road system shall be recorded on this map as soon as is reasonably possible. The map, as it is periodically revised, shall be kept on file in the office of the clerk of the board of supervisors where it shall be available for public inspection.

> (2) On or before July 1, 2000, the board of supervisors of each county shall prepare and adopt a county road system register in which shall be entered:

---

[13] The grant of the easement was redundant.

12

(a) The number and name of each public road on the county road system.

(b) A general reference to the terminal points and course of each such road.

(c) A memorandum of every proceeding in reference to each such road, with the date of such proceeding, and the page and volume of the minute book of the board of supervisors where it is recorded; however, reference to proceedings before July 1, 2000, shall not be required.

Newton County did not comply with this statute following the board's 2001 vote to accept the Deerfield roads.

¶22. However, Mississippi Code Section 65-7-4(5) (Rev. 2021) provides:

The minutes of the board of supervisors containing proceedings with respect to county roads and the county road system shall serve as the official record until such proceedings are recorded on the official map and in the county road system register.

Under the order of priority recognized by these statutes, the 2001 minutes of the board of supervisors are effective as the official record. The failure to add the roads to the registry and the map in a timely manner did not obviate the county's explicit acceptance of the dedication.[14]

---

[14] The requirement that "[c]hanges to the county road system shall be recorded on this map as soon as is reasonably possible" promotes transparency and public confidence in the use of public resources. *See* Miss. Code Ann. §65-7-4 (Rev. 2021). Supervisors can be held liable individually for the unlawful expenditure of public funds to maintain private roads projects or driveways. ***Coleman***, 78 So. 2d at 787. In Mississippi Attorney General Opinion, No. 2004-0118, 2004 WL 1171831, *Hudson*, at *1 (Apr. 2, 2004), the Attorney General's office advised sensibly that "if the board accepts the road in question, the road should be added to the map and register before the county works the road." "While attorney general opinions are not binding on Mississippi courts, they can be persuasive authority for consideration by our courts." ***Ball v. Mayor Bd. of Aldermen of City of Natchez***, 983 So. 2d 295, 306 (Miss. 2008) (citing ***DuPree v. Carroll***, 967 So. 2d 27, 31 (Miss. 2007)) .

¶23. The county appears to have conceded by the time of the summary judgment hearing that the board's 2015 vote to "not accept" the Deerfield roads pursuant to Section 65-7-57 had no legal effect. Section 65-7-57 establishes the requirements for citizens to petition the board to accept roads into the county system and does not operate as a mechanism for a board unilaterally to divest the county of roads previously accepted. No citizen petition was under consideration at the December 2015 board meeting. As discussed in greater detail below, abandonment of a section of the county road system is governed by Mississippi Code Section 65-7-121 (Rev. 2021), a process the board did not pursue.

## II. Whether the county can invoke the doctrine of laches or statute of limitations.

¶24. At the summary-judgment stage, the county argued that the subdivision's claims were barred by the doctrine of laches. The county argued it was harmed by the subdivision's failure to pursue its alleged rights sooner, resulting in excessively cumulative and expensive repairs. In the alternative, the county argues that the subdivision's claims are barred by the catch-all three-year statute of limitations given that the subdivision residents knew by 2012 that the roads were not on the county road map. The chancellor denied the county's motion for summary judgment. A panel of this Court then denied the county's petition for interlocutory review. Order, *Newton Cnty., Miss. v. Deerfield Ests.*, No. 2022-M-00932-SCT (Miss. Sept. 28, 2022).

¶25. In *City of Jackson v. Johnson*, 343 So. 3d 356, 367 (Miss. 2022), this Court held as a matter of first impression that as a "general rule . . . once a case has been tried, a pretrial order denying summary judgment will not be reviewed on appeal." The subdivision argues

14

that this rule applies in the present case to preclude consideration of the county's affirmative defenses on direct appeal.

¶26. The denial of interlocutory review under Mississippi Rule of Appellate Procedure 5 does not operate as a judgment on the merits. The general rule adopted in *Johnson* contemplates a scenario in which the universe of evidence presented at a final trial naturally and necessarily supersedes the limited universe of evidence available at the time summary judgment was denied; therefore, the proper appeal is from the final judgment. *Id.* "[A]ppeals from the denial of a motion for summary judgment are interlocutory in nature and are rendered moot by a trial on the merits." *Id.* (internal quotation mark omitted) (quoting *Miss. Bureau of Narcotics v. Hunter*, 311 So. 3d 629, 635 (Miss. Ct. App. 2020)).

¶27. However, in *Johnson* we acknowledged the possibility that "an exception exists if the pretrial summary judgment ruling involved a pure question of law." *Id.* at 637 (quoting *Franklin Collection Serv. Inc. v. Collins*, 206 So. 3d 1282, 1284 (Miss. Ct. App. 2016)).[15] Here, the chancellor's rejection of the county's affirmative defenses was not rendered moot by the subsequent trial on the merits. This legal conclusion was not readjudicated at trial. Therefore, the general rule announced in *Johnson* is inapplicable.

¶28. With this issue ripe for appellate review, we hold that the county cannot invoke the doctrine of laches or the general three-year statute of limitations to bar the subdivision's

---

[15] *See also **Blessey Marine Servs., Inc. v. Jeffboat, LLC**, 771 F.3d 894, 897 (5th Cir. 2014)). In **Johnson**, we adopted the approach of the Fifth Circuit, which finds an exception to the general rule when "appellant seeks review of a [trial court's] legal conclusions in denying summary judgment . . . ." **Blessey**, 771 F.3d at 897.

request for a declaratory judgment that the roads are public roads.[16] Under the plain language of Section 65-7-4(5), the board's 2001 minutes continue to operate as the controlling official record. While county officials possess a great deal of discretion in their allocation of resources for maintenance, they are charged also with an ongoing ministerial duty to inspect and maintain public roads. *See* Miss. Code Ann. § 65-7-117, -119 (Rev. 2021); *see* **Berry v. Warren**, 304 So. 2d 284 (Miss. 1974) (discussing the balance between the ministerial and discretionary functions of county supervisors).

¶29.    Importantly, the abandonment of county roads is governed by Mississippi Code Section 65-7-121 (Rev. 2021). Requirements for abandoning a county road include selection of a statutorily enumerated justification or justifications for the abandonment,[17] a public hearing on the proposed abandonment, and at least two notices of the hearing to the public not less than two weeks prior to the hearing date. *Id.* Compliance with the statute is required before "[t]he resolution of the board of supervisors abandoning any section of the county road system will abrogate the easement theretofore owned, held, claimed or used by or on

---

[16] The parties agree that no Mississippi statute or case law is directly on point. The subdivision argued that the county waived any affirmative defenses by failing to litigate them in a timely manner; because we find that the defenses are inapplicable, we do not deem it necessary to address the waiver argument.

[17] The four disjunctive grounds for abandonment are that the "section of the road does not provide primary access to occupied properties"; that for ten consecutive years traffic has been "intermittent and of such low volume that no substantial public purpose is being served thereby"; that the board for five consecutive years "has not maintained such section as part of the county road system;" or for any reason if "the public interest or convenience does not require the section to remain open to the public or that it is in the public interest or convenience to close, vacate and abandon the section." Miss. Code Ann. § 65-7-121(1)(a)-(d) (Rev. 2021).

16

behalf of the general public . . . ." Miss. Code Ann. § 65-7-121(4) (Rev. 2021)[18]*; see also*

***Tippah Cnty. v. LeRose***, 283 So. 3d 149 (Miss. 2019). We find that a county cannot avoid

compliance with these procedures by asserting a laches or general limitations defense.

## CONCLUSION

¶30.    The chancellor found correctly that the main roads of Deerfield Estates subdivision

were accepted by Newton County as public roads via express common law dedication. The

board accepted the roads on its official minutes, the county recorded rights of way over the

roads, the county has never levied taxes on the rights of way, and the public has unrestricted

access to and use of the roads. The county's asserted affirmative defenses are inapplicable

to the subdivision's claims.

¶31.    **AFFIRMED.**

 **RANDOLPH, C.J., KING, P.J., COLEMAN, MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**

---

[18] *See also* Miss. Code Ann. § 65-7-121(5), requiring that signs be posted at the intersection of abandoned roads and county roads. Further, proceedings abandoning county roads "shall be documented in the official record of the county road system in accordance with the requirements of Section 65-7-4." Miss. Code Ann. § 65-7-121(6).